IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* NORMAN RILLE and NEAL ROBERTS,<br><br>*Plaintiff*,<br><br>vs.<br><br>ACCENTURE LLP, ACCENTURE LTD., and PROQUIRE, LLC,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 4-04 CV0000985WRW<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF ACCENTURE'S MOTION TO COMPEL RESPONSES TO ACCENTURE'S SECOND SET OF INTERROGATORIES AND THIRD SET OF DOCUMENT REQUESTS**

In its Opposition to Accenture's Motion to Compel Responses to the Second Set of Interrogatories and Third Set of Document Requests dated June 21, 2010 ("June 21 Opposition"), the Government makes a number of admissions -- upon which Accenture relies -- which limit certain aspects of the Government's claims. However, the Government continues improperly to contest Accenture's Discovery Requests.[1] The principal flaw of the Government's argument is that it focuses entirely on preserving flexibility for itself and its claims. The Government's Opposition fails to recognize that Accenture has the right to present defenses to the Government's claims and that Accenture has the right to take discovery as to those defenses.

---

[1] Capitalized terms used herein shall have the same meaning as set forth in Accenture's June 4, 2010 Memorandum of Law in Support of Accenture's Motion to Compel Responses to Accenture's Second Set of Interrogatories and Third Set of Document Requests ("Motion to Compel Br.").

If Accenture is kept in the dark as to what the Government alleges until at or near the end of the discovery period, it will be deprived of the opportunity to defend itself. Given that the Government's anticompetitive activity allegations in the FAC are vague and indefinite, Accenture must be permitted to conduct discovery now, to learn the basis of the Government's allegations before it is too late.

As to the Government's admissions, the Government's Opposition asserts that it has provided all currently known information with respect Accenture's Interrogatories. *See* June 21 Opp'n at 1 ("[T]he United States has provided specific answers to Accenture's requests based on the information now available to it.") With respect to Accenture's Document Requests, with the exception of Document Request number 8, the Government asserts that it has provided all responsive, non-privileged materials that it has been able to locate. *See id.* at 2.

The Government also states that a Sherman Act violation "is not an element of FCA liability in this case" (*id.* at 14) and that "[a]ntitrust damages models or theories are not at issue in this FCA case." *Id.* at 8-9. The June 21 Opposition further demonstrates that:

- The three contracts that the Government identifies are the only contracts at issue in its claims of "anticompetitive activity";
- The Government's anticompetitive activity allegations with respect to these three contracts are based entirely on alleged bid-rigging and not on any other allegedly illegal acts; and that
- The Government is not alleging a violation of the Sherman Act or any other federal antitrust law.

*Id.* at 2-3, 6-8.

Based on the Government's representation in its June 21 Opposition that it has provided complete responses based on its current information (except as specifically identified),

if the Government supplements its discovery responses at a later time, the Government should be compelled to prove that it learned such information after June 21, 2010, and that it timely supplemented its responses after learning such information. To the extent that the Government fails to supplement its responses in a timely manner, it should be precluded from presenting any facts or information that it has not by this time disclosed for purposes of summary judgment or at trial. *See, e.g.*, *Nutt v. Black Hills Stage Lines, Inc.*, 452 F.2d 480, 483 (8th Cir. 1971).

Additionally, as noted above, the June 21 Opposition makes a number of mistaken arguments.

- First, contrary to the Government's argument, contention interrogatories are not only appropriate, but are necessary, at this time to clarify the issues and potentially narrow the scope of discovery, among other things.

- Second, the Government's Discovery Responses with respect to its purported damages ignore clear legal principles regarding recovery of, at most, the *difference* between what the Government paid and what it would have paid had it known about the alleged bid-rigging.

- Third, the Government has failed to refute Accenture's showing that responses to Interrogatory number 5 and Document Request number 8 are highly relevant to Accenture's defenses.

- Finally, while the Government claims that it "may" have lost certain documents related to EDW at Wright Patterson, it should be compelled definitively to determine if these highly relevant documents have indeed been lost, and to describe in detail the efforts the Justice Department undertook to preserve documents with respect to its anticompetitive activity allegations.

3

I.  **The Government's Objection to Contention Interrogatories Is Without Merit**

First, as discussed in Accenture's June 14, 2010 Reply Brief in Further Support of Its Motion to Compel Answers to the First Set of Interrogatories ("June 14 Reply"), courts have required plaintiffs to answer contention interrogatories regardless of the discovery schedule. *See* June 14 Reply at 2-3. *See also Nat'l Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP.*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (granting motion to compel contention interrogatories, and stating that requiring responses to contention interrogatories is consistent with the purposes of Rule 11 of the Federal Rules of Civil Procedure); *Firetrace USA, LLC v. Jesclard*, No. CV-07-2001-PHX-ROS, 2009 WL 73671, at *2-*3 (D. Ariz. Jan. 9, 2009) (granting motion to compel responses to contention interrogatories based on "presently-known facts" even though, at that point, discovery was "very preliminary"). In *Krawczyk v. City of Dallas*, cited by the Government (*see* June 21 Opp'n at 10), the court overruled objections to contention interrogatories, and stated that "[t]he general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required." No. Civ.A. 3:03-cv-0584D, 2004 WL 614842, at *5 (N.D. Tex. Feb. 27, 2004).

At this stage of the discovery process, contention interrogatories are not premature as the Government's Opposition attempts to portray. As is demonstrated by the Government's own statements in its Opposition: the Government has already "produced *all* non-privileged documents that it located after a diligent search and that are responsive to [Accenture's] Third Set of Document Requests, except for documents responsive to Document Request 8." June 21 Opp'n at 11 (emphasis added). To be able to prepare a defense and take further discovery as needed, including, but not limited to, depositions, Accenture must know the nature of the Government's claims, based on the Government's currently available information. The Government's untenable position is that it is entitled to wait to provide Accenture the requested

4

information about its claims until at or near the end of discovery when it will be too late for Accenture to prepare a defense. Such a position defies the basic purpose of discovery. *Keaton v. Prop. & Cas. Ins. Co. of Hartford*, No. 4:07-CV-634-BSM, 2008 WL 2519790, at *1 (E.D. Ark. June 20, 2008).

Furthermore, the Government's concern that it must respond with "finality" at this stage is misplaced; the Government has an obligation to provide complete answers based on its current knowledge. *See Firetrace*, 2009 WL 73671 at *3. If the Government learns more information at a later date from Accenture or from third parties, then the Government has an obligation and an opportunity timely to supplement its responses at that later date. *See* Fed. R. Civ. P. 26(e); *see also Campbell v. Washington*, No. C08-0983-JCC, 2009 WL 577599, at *3 (W.D. Wash. Mar. 5, 2009). In *Capacchione v. Charlotte-Mecklenburg Schools*, relied on by the Government (*see* June 21 Opp'n at 10), the court granted a motion to compel responses to contention interrogatories and noted, with respect to the defendant's concern about timing of the responses, that the defendant would "be allowed to supplement its responses at a later date." 182 F.R.D. 486, 489 (W.D.N.C. 1998).

Even if discovery were at an "early stage" (which it is not), according to a case relied on *by the Government*, contention interrogatories can be appropriate early in the discovery process if the responses would "(1) clarify the issues in the case, (2) narrow the scope of the dispute, (3) set up early settlement discussions, *or* (4) expose a substantial basis for a dispositive motion." *Vishay Dale Elecs., Inc. v. Cyntec Co.*, No. 8:07CV191, 2008 LEXIS 94492, at *14-*15 (D. Neb. Nov. 6, 2008) (emphasis added). As was discussed in Accenture's June 14, 2010 Reply Brief, at 2, this test is satisfied here.

5

Indeed, the need for more clarity is apparent from the very recent differing explanations of the alleged bid rigging activity by the Government in its June 21 Opposition and its June 7, 2010 Opposition to Accenture's Motion to Compel Answers to Accenture's First Set of Interrogatories (Restated) ("June 7 Opposition"). In the June 7 Opposition, the Government characterizes the allegations as one of three forms of alleged Alliance Revenue: "Under the Bid Rigging form of Alliance Revenue, Accenture conspired with its technology partners and received undisclosed payments of cash in return for its agreement not to bid on certain federal procurements in violation of anti-competitive statutes and regulations." June 7 Opp'n at 5. In contrast, the June 21 Opposition does not mention alliances or alliance benefits at all, and, in an effort to avoid discovery aimed at the Government's anticompetitive activity allegations, paints the alleged bid rigging activity as a stand-alone violation of the FCA irrespective of whether there also was a violations under antitrust law:

> [I]n this case the Unite States claims that Accenture violated the FCA by submitting claims for payment to federal agencies that were the result of bid-rigging that compromised the underlying contracts. Again, while this conduct may have violated the Sherman Act as well, such a violation is not an element of FCA liability in this case.

June 21 Opp'n at 12.[2] These differing accounts of the basis of the Government's allegations highlight precisely why the Government should be compelled to provide more information with respect to its allegations now.

---

[2] *See also* June 21 Opp'n at 7: "[B]id-rigging makes a claim false or fraudulent because it undermines the government contracting process, which relies on competition among federal contractors, *see, e.g.*, 41 U.S.C. § 251 (Competition in Contracting Act.)"

The Competition in Contracting Act ("CICA") has no application in this context and it is unclear why the Government cites it here. Indeed, the CICA puts the obligation on *the government* to seek "full and open competition through the use of competitive procedures." 41 U.S.C. § 253(a)(1)(A). For example, the Court of Appeals for the Federal Circuit has stated: "For each solicitation, *a contracting officer* must maintain full and open competition in the procurement process, unless one of the limited exceptions applies. CICA mandates impartial, fair and

For example, how does the Government intend to prove the anticompetitive activity allegations? Does it allege a *per se*-type of allegation? Or does it allege that the anticompetitive activity falls under a "rule of reason"-type of analysis where the Government would have to prove, *inter alia*, a relevant market and demonstrate an injury to competition in that market? The Government has failed to provide the type of information related to a rule of reason allegation. *See* Motion to Compel Br. at 6-8. If the Government does not intend to make a rule of reason -type of argument, then it should be compelled to say so because this would narrow the issues. However, it is important to note that, aside from what the Government alleges, Accenture vigorously disputes the anticompetitive activity allegations (whether *per se* or rule of reason), and must be permitted to conduct discovery about its defenses.

## II. The Government's Interrogatory Responses With Respect to Damages Fail to Address What It Would Have Paid Absent the Alleged Illegal Conduct

The Government's two Interrogatory Responses with respect to damages (numbers 7 and 8) fail to address what the Government would have paid absent the conduct about which it complains. However, the Government states that damages (if any) should be calculated as the difference between what was paid under the contract and what would have been paid absent the allegedly illegal conduct: "[T]he United States is entitled to that amount the government paid under the contracts, *less what it would have paid had it known about the bid-rigging. See, e.g., United States v. Mackby*, 339 F.3d 1013, 1018-19 (9th Cir. 2003)." June 21 Opp'n at 9 (emphasis added); s*ee also United States v. Cooperative Grain & Supply Co.*, 476 F.2d 47, 62 (8th Cir. 1973) ("The measure of the government's damages would be the amount that it paid out by

---

equitable treatment *for each contractor*. This competitive fairness requirement, with its *bid protest remedies*, restrains a contracting officer's contract administration." *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1543 (Fed. Cir. 1996) (emphasis added).

7

reason of the false statements over and above what it would have paid if the claims had been truthful.") (citation omitted).

The only damage that the Government alleges that it suffered in its Interrogatory Response is the entire contract price of the three contracts at issue (only one of which was awarded to Accenture). *See* June 21 Opp'n at 8. The Government's position ignores the clear legal principle that they are only entitled to, at most, the *difference* in price caused by the allegedly illegal conduct. *See id.* Moreover, although the Government claims in its June 21 Opposition that Interrogatory number 8 is unclear, such interrogatory seeks precisely this information, *i.e.*, what would the Government have paid absent the alleged illegal conduct and what facts and theories support that claim. The Government should be required to respond to Interrogatory number 8 and supplement its response to Interrogatory number 7.

### III. The Government's Opposition Has Failed to Show Why It Should Not be Compelled to Respond to Interrogatory Number 5 and Document Request Number 8

Interrogatory number 5 and Document Request number 8 seek information and documents regarding the Government's policies and practices with regard to accepting bids from Systems Integration Consultants. The Government summarily argues that this information is not relevant because it does not relate to the three contracts at issue. However, the Government's argument ignores that Accenture is entitled to a defense and that relevant discovery cannot be limited to the Government's allegations alone. Information about how the Government weighs and evaluates price and other factors in assessing bids is directly related to a potential calculation of any purported injury or damage and whether such calculation is possible. *See supra* at II. For example, Accenture's Discovery Requests are relevant to the following questions:

- How frequently DISA or DeCA awarded a Government contract to a systems integrator that quoted a higher bid or price than that being quoted by another systems integrator?

- How the Government evaluates competing bids where price is not the deciding factor?

- What capabilities, qualities, technical abilities, resources, and/or qualifications of systems integrators the Government values in its evaluations of bids?

- What other criteria are taken into account in the selection process such as past performance on Government contracts, timing/scheduling of performance, or past performance evaluations on contracts in the private sector?

- How these criteria are valued, monetized and/or compared (if at all)?

Moreover, the Government does not explain in any meaningful manner what the asserted burden would be if it were forced to respond to these requests. Contrary to the Government's boilerplate arguments, the narrowed requests are tailored to the Government's allegations, and are reasonable in light of the scope of discovery in this case. *See* Motion to Compel Br. at 9-11. The Government should be compelled to respond to the narrowed requests described above.

## IV. The Government Should be Compelled to Identify Additional Information Regarding the Potentially "Lost" Documents

The Government does not deny that it has failed to produce a single hard-copy document from the most relevant time-frame for its allegations concerning EDW at Wright Patterson. The Government also fails to deny that the Government's allegations concern purported facts that occurred *almost a full year* prior to the date of the earliest document that it has produced with respect to EDW at Wright Patterson. These documents are important to answer several questions with respect the Government's allegations and Accenture's defenses such as:

- Why did the Government decide to "single source" the EDW Wright Patterson contract to NCR?

9

- What benefits did the Government believe that it gained by contracting with NCR?

- What other companies (if any) were considered as potential counterparties to the contract?

- Did the Government consider having the contract competitively bid? If so, which companies would have been included in a competitive bid process? If not, why not?

- Did the Government follow all applicable laws, statutes, common law, and regulations in its procedures, including, but not limited to, the Competition in Contracting Act?

- What damage or injury did the Government purportedly suffer, given that it obtained its desired result *i.e.*, a single source contract with NCR?

The Government does not deny that answers to these questions may be contained in the "lost" documents. Moreover, the Government's Opposition acknowledges that its knowledge of the alleged bid-rigging activities is relevant (s*ee* June 21 Opp'n at 9), and it is undisputed that information about this knowledge could be contained in the Government's documents from the time of the bidding on the contract.

The Government further fails to give an adequate explanation of what happened to the documents. The Government's Opposition states: "[i]t appears from speaking with the pertinent government personnel that the electronic and hard copy files of some program personnel that were created before the move cannot be located and *may have been lost* in the move." June 21 Opp'n at 13 (emphasis added). Were the documents actually lost? The Government should be compelled to confirm exactly what, if anything, was lost in the move or, if it cannot, to describe its efforts to determine what was lost in the move. In addition, the Government should be compelled to describe in detail the efforts it undertook to preserve documents relevant to its anticompetitive activity allegations and Accenture's potential defenses thereto.

**CONCLUSION**

Accenture respectfully requests that the Court issue an order (1) compelling the United States to respond fully to Accenture's discovery requests regarding the Government's anticompetitive activity allegations (2) overruling the Government's objections with respect to contention interrogatories and Interrogatory number 5 and Document Request number 8, (3) compelling the Government to respond to Discovery Requests concerning damages, including, but not limited to, supplementing its response to Interrogatory number 7 and responding to Interrogatory number 8, and (4) compelling the Government to provide further information about the possibly lost documents related to EDW at Wright Patterson.

Dated: June 28, 2010                                    Respectfully submitted,


                                                        By: /s/ Lyn P. Pruitt
                                                            Lyn P. Pruitt
                                                            Ark. Bar No. 84121

Of Counsel:                                             Mitchell, Williams, Selig, Gates
J. Andrew Jackson (admitted *pro hac vice*)                & Woodyard, P.L.L.C.
*jacksona@dicksteinshapiro.com*                         425 West Capitol Ave., Suite 1800
David M. Nadler (admitted *pro hac vice*)               Little Rock, Arkansas 72201
*nadlerd@dicksteinshapiro.com*                          (501) 688-8800
                                                        *lpruitt@mwsgw.com*
Dickstein Shapiro LLP
1825 Eye St. NW
Washington DC, 20006
Tel: (202) 420-2200
Fax: (202) 420-2201

11

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June 2010, I caused a true and correct copy of the foregoing document by electronic mail upon the following:

**Jacquetta F. Bardacos**
jbardacos@packard.com

**Jenelle M. Beavers**
jenelle.beavers@usdoj.gov

**Michael Bierman**
mbierman@luce.com,
tdelpomar@luce.com

**Stephen C. Engstrom**
stephen@wecc-law.com,
marilyn@wecc-law.com

**Philip J. Favro**
pfavro@packard.com

**Craig H. Johnson**
cjohnson@packard.com

**Shirley Guntharp Jones**
shirley@wecc-law.com,
lorraine@wecc-law.com

**Jeehae Jennifer Koh**
jennifer.koh@usdoj.gov

**Linda McMahon**
linda.mcmahon2@usdoj.gov

**David M. Nadler**
nadlerd@dicksteinshapiro.com

**Daniel W Packard**
dpackard@packard.com

**Lon D. Packard**
lpackard@packard.com

**Ronald D. Packard**
rdpackard@packard.com

**Von G. Packard**
vpackard@packard.com,
jsimmons@packard.com

**Shannon S. Smith**
Shannon.Smith@usdoj.gov,
Paulette.Chappelle@usdoj.gov,
Maria.Altadonna@usdoj.gov

**Jeffrey Wexler**
jwexler@luce.com,
tdelpomar@luce.com

**Donald J. Williamson**
don.williamson@usdoj.gov

And by United States Mail this same date to:

The Honorable John W. Cole
311 West Sunset Drive
Sheridan, AR 72150

/s/ Lyn P. Pruitt
    Lyn P. Pruitt

DOCSNY-421859v4