IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* NORMAN RILLE and NEAL ROBERTS,<br><br>      *Plaintiffs*,<br><br>      vs.<br><br>ACCENTURE LLP, ACCENTURE LTD., and PROQUIRE LLC,<br><br>      *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 4-04 CV0000985WRW<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RELATORS' MOTION TO COMPEL DISCOVERY CONCERNING EQUITY ALLIANCE BENEFITS

Accenture LLP ("Accenture"), Accenture Ltd., and Proquire LLC (collectively, "defendants") oppose the Relators' Motion to Compel Discovery Concerning Equity Alliance Benefits (the "Equity Motion").[1]

## INTRODUCTION

The Equity Motion asks the Special Master to compel Accenture to produce documents without Relators ever (1) having served discovery requests for those documents, (2) making any showing that Accenture has refused or failed to comply with outstanding discovery requests, or (3) complying with their own meet and confer obligations.

As a threshold matter, the Equity Motion fails because Relators never requested the production of most of the discovery that they now seek to compel under Fed. R. Civ. P. 37. In fact, Relators do not cite, and Accenture cannot find, any discovery requests served that ask

---

[1] Unless indicated otherwise, citations to "Equity Motion" refer to the Relators' memorandum in support of their Motion to Compel Production of Discovery Concerning Equity Alliance Benefits.

Accenture to produce the identities of "all the [Alliance Service Leads ("ASLs")], who were responsible for tracking of equity Alliance Benefit revenue earned and/or vested on jobs for each equity alliance," the identities of the alliances the ASLs tracked, or all electronically stored information ("ESI") of the ASLs, as well as ESI of Mary Moussa, Emmanuel Familar, and Diana Gravenhorst.  Nor do Relators cite, or can Accenture find, any discovery request for all documents related to any audit of Accenture's financials that included equity holdings or stock warrants between January 1, 1997 and December 31, 2003.  Relators' contention that the production of the categories of discovery requested here was "already ordered by the Court" (Equity Motion at 3) is without basis.  Other than documents that Accenture has produced, Relators do not, and cannot, explain how most of the discovery now sought in the Equity Motion is contained in any earlier discovery requests and orders – because they are not.

Even if the Court were to consider the substance of the discovery requests made for the first time in the Equity Motion, Relators' motion fails.  Relators have failed to demonstrate even a threshold level of relevance for much of the documents sought or provide any good cause for requiring Accenture to produce ESI that is not reasonably accessible.  Moreover, Relators ask the Court to compel defendants to produce broad categories of ESI without negotiating the identities of appropriate custodians and without the use of any search terms whatsoever in violation of the parties' Rule 26(f) agreement.

As Relators have not previously requested most of the documents the Equity Motion seeks, it is logically impossible for Relators to have complied with their obligations to meet and confer, and they did not.  Local Rule 7.2(g) and Fed. R. Civ. P.  37(a)(1) require the parties to "confer in good faith on the specific issue or issues in dispute" prior to filing any discovery motion.  The sole communications since November 2009 regarding the production of equity-related discovery were two letters – one by Relators and one by the Government (together

"plaintiffs") written seven months before Relators filed the Equity Motion.  Those letters addressed only a small subset of the discovery now sought in the Equity Motion, and were answered in full by Accenture's November 30, 2009 letter and subsequent searches and productions.

The Court should deny the Equity Motion and award defendants their reasonable expenses, including their attorneys' fees, because Relators' Motion was not substantially justified.  See Fed. R. Civ. P. 37(a)(5)(b).  If Relators had complied with their obligation under Rule 37(a)(1) and Local Rule 7.2(g) to meet and confer in good faith prior to filing their Motion, both the parties and the Court would have been spared significant expenditure of time and resources.

## FACTUAL BACKGROUND

### Agreed Procedures Regarding ESI

Before discovery began in this case, all parties participated in a Rule 26(f) conference and negotiated agreements regarding discovery procedures.  The parties' agreements were memorialized in the September 3, 2008 Joint F.R.C.P. 26(f) Report.  See Exhibit 1, Joint F.R.C.P. 26(f) Report.  With respect to ESI, the parties agreed to "cooperate to develop reasonably focused searches to identify relevant, non-privileged ESI responsive to discovery requests."  Id. at 4.  Pursuant to this agreement, the parties have negotiated the identification of appropriate custodians and reasonable search terms to apply to the ESI of those custodians.

### Relators' Discovery Requests

In 2008, Relators served discovery requests relating to certain of Accenture's alliance partners in which Accenture held equity or warrants to purchase equity.  While Accenture was conducting searches for, and collecting documents responsive to, these and other of Relators' discovery requests, Relators moved the Court to compel Accenture to produce documents.  On

December 11, 2008, Judge Wilson, referencing a letter sent to Accenture's counsel on December 10, 2008  instructing Accenture to "turn to in providing the requested information to plaintiffs' counsel," granted Relators' motion to compel.  Eq. Mot., Exh. 2.  In response to Relators' discovery requests, Accenture conducted a reasonable search and both Accenture and plaintiffs identified certain individuals likely to possess documents responsive to the requests.

On July 8, 2009, the parties entered into a stipulation – the result of significant efforts by all parties – to identify and narrow the scope of discovery.  Accenture agreed to identify any responsive and relevant documents or categories of documents relating to stock, warrants, stock options, or other equity in alliance partners that Accenture earned through its alliance agreements and to produce such responsive, relevant, and non-privileged documents by August 3, 2009.  Eq. Mot., Exh. 3 at 7.  Accenture met its commitments by conducting a reasonable search and timely identifying and producing the responsive, relevant, and non-privileged documents.

**Plaintiffs' Letters Regarding Equity-Related Documents**

On October 1, 2009, the Government wrote to Accenture asking for the production of certain documents.  Eq. Mot., Exh. 16 at 1.  In relevant part, the government asked for documents relating to "the PWC audit of Accenture's financials as of 5/31/01, the audit work papers, and supporting materials that relate to Accenture's equity holdings"; "Warrant Revenue Reporting Materials"; "Warrant Tracking Reports for equity related transactions"; "Completed Acknowledgment of Vesting Forms for each equity company"; and, the "Warrant Tracking Database." Id.

On November 18, 2009, Relators wrote to counsel for Accenture seeking a "monthly warrant tracking document" that Relators asserted was created and maintained "at least during 2000 to the end of 2002"; "documents indicating which jobs, client introductions or generated

income resulted in vesting events", including those documents contained in the ESI from certain identified ASLs; and, forms acknowledging vesting of performance based warrants.

**Accenture's November 30, 2009 Letter Answering Plaintiffs' Concerns**

Two weeks later, Accenture responded with a four-page, single-spaced letter detailing its production of relevant, responsive, and non-privileged documents, indicating what documents were forthcoming, detailing efforts to locate documents sought by Relators, and providing explanations that certain ESI was not reasonably accessible. Eq. Mot., Exh. 18. Notably, Accenture never refused to produce documents or objected to the production of the relevant, responsive, and non-privileged documents sought in plaintiffs' letters. Accenture confirmed that it "has produced any and all non-privileged, relevant, and responsive equity-related documents that it has located, including all such documents related to PWC's audit in 2001, warrant revenue reporting materials, warrant tracking reports, vesting acknowledgment forms, and equity-related database." Eq. Mot., Exh. 18 at 1.

Much of the November 30 letter was spent citing deposition testimony and other produced documents to demonstrate that Relators' contention (repeated in the Equity Motion) that significantly fewer documents were produced than they expected was based on misleading and incorrect citations of the deposition testimony of Ann Pajak Heenan. Eq. Mot., Exh. 18 at 2 - 4. Accenture further responded that it does not have reasonably accessible ESI for most individuals identified by Relators, including Emmanuel Familar, but Accenture agreed to search the ESI of Mary Moussa and Diana Gravenhorst for performance warrant vesting forms. Eq. Mot. Ex. 18 at 3.

After sending the November 30 letter, Accenture searched the documents and ESI of Mary Moussa and Diana Gravenhorst and produced relevant, responsive, and non-privileged

documents.  See ACN-DS-00264489 – 00264508 and ACN-DS-00264441 – 0026448 (produced

Feb. 1, 2010), and ACN-DS-00264388 – 00264440 (produced Feb. 10, 2010,).

**Relators' Failure to Meet And Confer**

Plaintiffs never responded to Accenture's November 30, 2009 letter, or to

Accenture's later production or searches undertaken as a result of Relators' letter.  Relators have

never addressed the majority of the discovery sought for the first time in the Equity Motion,

including the full ESI of any ASL, and all documents for any audit that related to Accenture's

equity holdings and/or stock warrants for a period of six years.

## LEGAL ARGUMENT

**I.**     **RELATORS CANNOT OBTAIN AN ORDER COMPELLING DISCOVERY
THAT HAD NEVER PREVIOUSLY BEEN REQUESTED FROM ACCENTURE.**

Fed. R. Civ. P. 37(a)(3) permits a party to move for an answer or production only if

the answer or production has been requested under Rule 34.  See Fed. R. Civ. P. 37(a)(3)(iv).

"[T]o succeed on a motion to compel discovery, a party must first prove that it sought discovery

from its opponent."  Petrucelli v. Bohringer & Ratzinger, GBMH, 46 F.3d 1298, 1310 (3d Cir.

1995).  In Ledbetter v. United States, the court denied a motion to compel discovery where

defendants had not been served with a formal discovery request.  1996 WL 739036, at *1-*2

(N.D.Tex) (unreported).  The court reasoned that "it would be premature to grant the plaintiff's

Motion to Compel in the absence of a formal request served upon the proper parties" and that

"the court would "not compel a party pursuant to the federal rules until that party has had an

opportunity to voluntarily comply with a discovery request and refuses to do so."  Id.; see

Grissom v. N.L.R.B., 364 F. Supp. 1151, 1154 (M.D. La. 1973) ("until the mover . . . makes a

request for such documents and is improperly refused, this Court will not entertain any motion to

compel their production"); Hilgenberg v. Neth, 93 F.R.D. 325, 326 (E.D. Tenn. 1981) (declining

to compel production until movant served discovery and was refused); see also Hit Servs. v.

Caddo Energy Co., 2009 WL 185590, at *2 (W.D. Ark.) (unreported) (holding that court cannot

order production without some indication of what documents, or categories of documents, have

been "withheld").  The Equity Motion should be denied because Relators seek to compel the

production of discovery that was never requested under Rule 34.

   Furthermore, the Court did not order Accenture to produce categories of documents

sought in the Equity Motion.  Eq. Mot. at 3.  Relators do not cite, and Accenture cannot find, any

discovery requests served that ask Accenture to produce the identities of "all the ASLs, who

were responsible for tracking of equity Alliance Benefit revenue earned and/or vested on jobs for

each equity alliance," the identities of the alliances the ASLs tracked, or all ESI of the ASLs, as

well as ESI of Mary Moussa, Emmanuel Familar, and Diana Gravenhorst.[2]  Nor do Relators cite,

or can Accenture find, any discovery request for all documents related to any audit of

Accenture's financials that included equity holdings or stock warrants between January 1, 1997

and December 31, 2003.[3]  If Relators were to seek the production of such documents pursuant to

Fed. R. Civ. P. 34, as they are required to do, Accenture would have multiple valid grounds on

which to object.  Accenture should not lose its right to object because Relators failed to comply

with Fed. R. Civ. P. 34.

   There is only one category of documents sought in the Equity Motion that is arguably

encompassed within the July 2009 stipulation:  "documents that identify equity Alliance Benefits

---

[2] Although the October 1 and November 18, 2009 letters requested that Accenture produce
documents from the ESI of certain individuals, including Mary Moussa, Emmanuel Familiar, and
Diana Gravenhorst, neither letter identified any ASLs, and both letters only requested the
production of "relevant and responsive" documents – not all of the ESI of the individuals.
Furthermore, neither letter provided proposed search terms for Accenture to apply to the ESI of
any individual to identify the documents to review for relevance and responsiveness, as the
parties agreed to do in their Joint Rule 26(f) Report.

[3] The Government's October 1, 2009 letter did make an informal request for documents related
to the "PWC audit of Accenture's financials as of 5/31/01, the audit work papers, and supporting
materials that relate to Accenture's equity holdings," Eq. Mot., Ex. 16, but not the far more
expansive request here.

earned on, or in connection with, a federal government contract or subcontract." Eq. Mot. at 3.

However, Accenture did not object or refuse to provide these documents.  Rather, as stated in its

November 30 letter, Accenture conducted a reasonable search and produced all non-privileged,

relevant, and responsive documents in that category.[4]

## II.     THE EQUITY MOTION SHOULD BE DENIED BECAUSE NONE OF THE CATEGORIES OF DOCUMENTS ARE PROPERLY SUBJECT TO BEING COMPELLED.

### A.     Accenture has produced all non-privileged, relevant and responsive documents it has located that identify any equity Alliance Benefit earned on or in connection with a federal government contract or subcontract, so a motion to compel such documents is moot.

Relators ask the Court to compel Accenture to:

> produce all documents that identify any equity Alliance Benefits earned
> on, or in connection with, a federal government contract or subcontract,
> including but not limited to all performance warrant vesting forms
> (otherwise known as Acknowledgment of Vesting Event forms and
> Warrant Tracking Reports) and/or any other forms or reports used to track
> vesting events showing on what federal jobs Accenture earned
> performance warrants.

Eq. Mot. at 3.  Contrary to Relators' claim, Accenture has neither refused nor failed to produce

these documents.  Accenture has produced all non-privileged, relevant and responsive documents

that it has located.  See Eq. Mot. Exh. 18 at 2-3.

Relators assert that Ann Pajak Heenan's deposition testimony compels the conclusion

that Accenture has failed to produce relevant discovery.  See Eq. Mot. at 7.  However, nothing in

the cited testimony in the Equity Motion supports a conclusion that these alleged volumes of

---

[4] See, for example, ACN-DS-00000001 through ACN-DS-00007188 (documents relating to
equity vendors, including SEC filings; alliance, marketing, consulting, and stock agreements;
and correspondence regarding those alliances), ACN-DS-00102402 through ACN-DS-00107413
(including documents regarding ATV; summaries and portfolios of Accenture's equity positions,
and alliance, marketing, consulting, and stock agreements), ACN-RILLE-01122865 through
ACN-RILLE-01148305 (documents including portfolio reports;  emails regarding Accenture's
equity portfolio; and agreements), and ACN-DS-00263164 through ACN-DS-00263165
(including links to certain databases containing information relevant to equity holdings).

documents exist.  For example, Relators claim that Ms. Heenan's testimony compels the

conclusion that "hundreds if not thousands" of completed vesting acknowledgement forms exist.

However, Ms. Heenan (who Relators acknowledge is the "expected repository for critical equity

information" (Eq. Mot. at 2)) testified that her "best guess" was that she had received fifteen total

(i.e., related to both federal and non-federal) vesting acknowledgement forms.  Deposition of

Ann Pajak Heenan at 114, attached as Exh. 2,  see also Eq. Mot., Exh. 18 at 3.  Similarly,

Relators cite Ms. Heenan's testimony as the basis for their assertion that Accenture has provided

"less than 6% of the monthly tracking reports."  However, as Accenture stated in its

November 30 letter, Relators have identified the wrong document as the monthly summary, and

Accenture actually had produced numerous copies of the monthly reports circulated by

Ms. Heenan.  Eq. Mot., Exh. 18 at 2.  Finally, contrary to Relators' suggestion that Ms. Heenan

"routinely deleted" vesting acknowledgement forms or warrant tracking reports from her

computer (Eq. Mot. at 2), Ms. Heenan testified that she had no specific memory of ever deleting

the documents sought here.  Eq. Mot. at 6, fn.8, citing Exh. 14).

  The motion to compel these documents should be dismissed as moot.  Accenture has

produced the non-privileged, relevant, and responsive documents encompassed by this request,

and Relators provide no legitimate basis to conclude that additional discoverable materials have

been wrongfully withheld.

  **B.** **The Relators seek to compel discovery for which they have not, and can not, demonstrate a threshold level of relevance.**

  Relators ask the court to require Accenture to:

> identify all the ASLs, who were responsible for tracking of equity Alliance
> Benefit revenue earned and/or vested on jobs for each equity alliance, and
> the alliance each ASL tracked, and produce the ESI of the ASLs, and
> produce the ESI of Mary Moussa, Emmanuel Familiar [sic] and Diana
> Gravenhorst

and

> produce all documents pertaining to the PWC audit of Defendant's equity holdings and/or stock warrants, including, but not limited to reports, work papers, correspondence, email and memoranda regarding same, and the same for any other audit performed between January 1, 1997 and December 31, 2003, by PWC or any other company, that involved equity holdings and/or stock warrants

Eq. Mot. at 3.

Rule 26(b)(1) provides that parties may obtain discovery that is "relevant to any claim or defense."  The burden of showing relevance is on the party propounding the discovery.  <u>See Hofer v. Mack Trucks, Inc.</u>, 981 F.2d 377, 380 (8th Cir. 1992) (holding that a threshold showing of relevance must be made); <u>Marook v. State Farm Mut. Auto. Ins. Co.</u>, 259 F.R.D. 388, 395 (N.D. Iowa 2009) (the party seeking discovery has the burden of showing relevance when the request is overly broad on its face, or when relevance is not easily apparent); <u>Davis v. Union Pac. R.R. Co.</u>, 2008 WL 3992761, at *2 (E.D. Ark.) (unreported).  Relators make no showing of relevance here.

### 1.   Relators have not shown that the ESI they seek is relevant.

Relators contend that Accenture must produce <u>all</u> ESI for three identified individuals plus untold, unidentified, ASLs.  The only potentially relevant ESI, according to Relators' theory, would be those documents that reflect Accenture's receipt of an equity Alliance Benefit related to a federal contract or subcontract.  However, Relators make no attempt to distinguish between ESI relating to equity Alliance Benefits related to federal contracts or subcontracts and all other ESI of those unidentified ASLs – they simply ask the Court to compel production of it all.

### 2.   Relators have not shown that the audit material sought is relevant.

Relators do not even attempt to justify the highly irrelevant and overbroad production of all materials for any audit that related to Accenture's equity holdings or stock warrants over a six year period.  Eq. Mot. at 3.  Instead, Relators' argument in the Equity Motion refers solely to

the "PWC audit of Accenture's financials as of 5/31/01." Eq. Mot. at 3 and 11.  Accenture's

November 30 letter stated that Accenture had looked for documents related to that audit, and had

produced all of the non-privileged, relevant, and responsive documents that it had found.

Eq. Mot., Exh. 18, p.1.  Relators make no attempt to link the PWC audit of May, 2001 to the <u>six

years</u> of any audit of Accenture that involved equity holdings and/or stock warrants (whether or

not related to this action) that Relators seek here, and which they claim, without foundation,

"was already ordered by the Court." Eq. Mot. at 3.

      **C.**  **<u>Relators have not shown that good cause exists to require Accenture to attempt
to produce ESI that it has told Relators is not easily accessible.</u>**

Relators' November 18 letter sought certain ESI of several identified ASLs and

Emmanuel Familar.  Eq. Mot., Exh. 17, Exh. A.  Accenture responded that it did not have

reasonably accessible documents or ESI for Emmanuel Familar, or for ASLs Gina Jones

Deptula, Drew Fletcher, David Kane, Robert Many, Ainette Marshall, Meg McLaughlin, Deirdre

Peet, Jihad Rjeily, Kevin Rohan, and Mary Viviattine.  "If the ESI is not reasonably accessible, it

is only discoverable upon a showing of good cause by the requesting party, taking into

consideration the limitations of Rule 26(b)(2)(c)."  <u>Helmert v. Butterball</u>, LLC, 2010 WL

2179180, at *3 (E.D.Ark.) (unreported) (citing <u>Best Buy Stores, L.P. v. Developers Diversified

Realty Corp.</u>, 247 F.R.D. 567, 569 (D.Minn. 2007)).  Relators do not acknowledge Accenture's

statement that the ESI of eleven of the ASLs identified in the November 18 letter is not

reasonably accessible in the Equity Motion, and do not offer good cause for its production (even

if the ESI was otherwise non-privileged and relevant).

**III.**    **<u>RELATORS' FAILURE TO MEET AND CONFER IN GOOD FAITH IS
INEXCUSABLE, AND REQUIRES THAT THIS MOTION TO COMPEL BE
DENIED.</u>**

Relators have no basis to bring what are essentially new, overbroad, and

objectionable discovery requests to the Court in the guise of a Motion to Compel.  Local Rule

7.2(g) and Rule 37(a)(1), which obligate a party to certify that it has met and conferred in good faith with the opposing party prior to filing a motion to compel discovery, are intended to prevent a party from raising new discovery issues directly to the Court rather than attempting to resolve this issues between the parties.

The Eighth Circuit courts require compliance with meet and confer rules, and will deny a motion to compel where a movant cannot demonstrate that the parties attempted in good faith to resolve a discovery request.  See Robinson v. Potter, 453 F.3d 990, 995 (8th Cir. 1996). Mere lip service through a certification is insufficient.  Delaney v. Ashcraft, 2006 WL 2080023, at *2 (W.D.Ark.) ("Merely making a statement in a brief that the parties have conferred in good faith in insufficient.  Instead, the parties must actually attempt in good faith to resolve discovery disputes themselves."); see also Shuffle Master Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 170-71 (D. Nev. 1996) (Rule 37(a)(1) has two components: certification, which is  "accurately and specifically conveying to the court who, where, how and when the respective parties attempted to personally resolve the discovery dispute"; and performance, demonstrating that the movant "has (1) in good faith (2) conferred or attempted to confer."); Johnese v. Ashland, Inc., 2008 WL 927698, at *2 (E.D. Ark.).  Simply sending letters is insufficient.  Cotracom Commodity Trading Co. v. Seaboard Corp. articulates the meaningfulness intended in the meet and confer:

> when the dispute involves objections to requested discovery, parties do not
> satisfy the conference requirements simply by requesting or demanding
> compliance with the requests for discovery.  The parties need to address
> and discuss the propriety of asserted objections.  They must deliberate,
> confer, converse, compare views, or consult with a view to resolve the
> dispute without judicial intervention.  They must make genuine efforts to
> resolve the dispute by determining precisely what the requesting party is
> actually seeking; what responsive documents or information the
> discovering party is reasonably capable of producing; and what specific,
> genuine objections or other issues, if any, cannot be resolved without
> judicial intervention.

189 F.R.D. 456, 459 (D.Kan. 1999), <u>cited with approval in</u> <u>Robinson v. Napolitano</u>, 2009 WL 1586959, at *4 (D.S.D.) (unreported).  Relators have not made genuine attempts to meet and confer with Accenture regarding the discovery they seek in the Equity Motion.

First, plaintiffs' letters do not fulfill Relators' meet and confer obligations even as to the subset of discovery in the Equity Motion that the letters may have addressed.  Accenture fully responded to these letters on November 30, 2009, and continued to search for and produce non-privileged, relevant, and responsive documents, and neither the Government nor Relators responded to Accenture's letter.

Second, Relators did not attempt to meet and confer regarding the bulk of the discovery sought in the Equity Motion.  Plaintiffs' letters did not seek the identification of all ASLs and the production of their ESI, all the ESI of Emmanuel Familar, Mary Moussa, and Diana Gravenhorst, and six years of broadly-defined audit material.  That Accenture is not required to respond to requests for production for the first time in a motion to compel is reason alone to find that Relators' ostensible certification is wholly without merit.

Finally, Relators never fulfilled their meet and confer obligations because they never attempted any real, substantive discussions with Accenture, or attempted to resolve any outstanding issues without court intervention.  This Court should not permit Relators to make a mockery of their obligations under Rule 37(a) and Local Rule 7.2(g).

## IV. THE COURT SHOULD AWARD DEFENDANTS THEIR REASONABLE EXPENSES, INCLUDING ATTORNEYS' FEES, INCURRED IN OPPOSING THIS MOTION.

Rule 37(a)(5)(B) states that if a Rule 37 motion to compel is denied, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorneys fees," unless "the motion was substantially justified or

other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(B)(5). There is no

justification, substantial or otherwise, for the filing of the Equity Motion: (1) Relators seek to

compel documents that they never sought through Rule 34 or any discovery procedure; (2) the

categories of documents sought to be compelled are either overbroad or objectionable on their

face; and (3) Accenture has already produced all documents that would be non-privileged,

responsive, and relevant to the formal requests Relators had made. Moreover, Relators did not

comply with their meet and confer obligations pursuant to Rule 37(a) or Local Rule 7.2(g).

## CONCLUSION

For the foregoing reasons, the Court should deny the Equity Motion, and award

Accenture its reasonable expenses, including attorneys' fees.

Dated: September 8, 2010                    Respectfully submitted,


By:   /s/ Lyn P. Pruitt
                                            Lyn P. Pruitt
Of Counsel:                                 Ark. Bar No. 84121
J. Andrew Jackson (admitted *pro hac vice*)
*jacksona@dicksteinshapiro.com*             Mitchell, Williams, Selig, Gates &
David M. Nadler (admitted *pro hac vice*)   Woodyard, P.L.L.C.
*nadlerd@dicksteinshapiro.com*              425 West Capitol Ave., Suite 1800
                                            Little Rock, Arkansas  72201
Dickstein Shapiro LLP                       (501) 688-8800
1825 Eye St. NW                             *lpruitt@mwsgw.com*
Washington DC, 20006
Tel:  (202) 420-2200
Fax:  (202) 420-2201

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September 2010, I caused a true and correct copy of the foregoing document by electronic mail upon the following:

**Jacquetta F. Bardacos**
jbardacos@packard.com

**Jenelle M. Beavers**
jenelle.beavers@usdoj.gov

**Michael Bierman**
mbierman@luce.com,
tdelpomar@luce.com

**Stephen C. Engstrom**
stephen@wecc-law.com,
marilyn@wecc-law.com

**Philip J. Favro**
pfavro@packard.com

**Craig H. Johnson**
cjohnson@packard.com

**Shirley Guntharp Jones**
shirley@wecc-law.com,
lorraine@wecc-law.com

**Jeehae Jennifer Koh**
jennifer.koh@usdoj.gov

**Linda McMahon**
linda.mcmahon2@usdoj.gov

**David M. Nadler**
nadlerd@dicksteinshapiro.com

**Daniel W Packard**
dpackard@packard.com

**Lon D. Packard**
lpackard@packard.com

**Ronald D. Packard**
rdpackard@packard.com

**Von G. Packard**
vpackard@packard.com,
jsimmons@packard.com

**Shannon S. Smith**
Shannon.Smith@usdoj.gov,
Paulette.Chappelle@usdoj.gov,
Maria.Altadonna@usdoj.gov

**Jeffrey Wexler**
jwexler@luce.com,
tdelpomar@luce.com

**Donald J. Williamson**
don.williamson@usdoj.gov

And by United States Mail this same date to:

The Honorable John W. Cole
311 West Sunset Drive
Sheridan, AR 72150                    /s/ Lyn P. Pruitt
                                              Lyn P. Pruitt