# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# LITTLE ROCK DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* NORMAN RILLE and NEAL ROBERTS,<br><br>*Plaintiff*,<br><br>vs.<br><br>ACCENTURE LLP, ACCENTURE LTD., and PROQUIRE, LLC,<br><br>*Defendants*. | Case No. 4-04 CV0000985WRW<br><br>**JOINT F.R.C.P. 26(f) REPORT**<br><br>PRESENT TRIAL DATE: July 28, 2009 |

The parties[1], by and through their attorneys of record, having held their Federal Rule of Civil Procedure 26(f) conference, hereby submit the following Joint Report.

      1.    <u>Changes in timing, form, or requirements of mandatory disclosures under F.R.C.P. 26(f)</u>

**PLAINTIFFS:** Mandatory Disclosures to occur on or before September 18, 2008. Parties should provide contact information for their former employees to the extent available. Defendants' proposal to not provide available addresses and telephone numbers for former employees is unacceptable.

**DEFENDANTS:** Defendants agree that mandatory disclosures shall occur on or before September 18, 2008. Defendants proposed to Plaintiffs that the parties agree that the disclosure need not include the addresses and telephone numbers of current and former employees and that each party agree to cooperate with the other parties in locating and contacting its current and former employees. Plaintiffs have agreed to Defendants' proposal with respect to current employees, but insist that the parties provide contact information for former employees. Defendants believe that any communications between one party and another party's former employee should be channeled through counsel for the former employer to ensure that applicable privileges are preserved. Thus, Defendants disagree that the parties should have to provide

---

[1] "Government" means the United States of America. "Relators" mean Norman Rille and Neal Roberts. "Plaintiffs" mean the Government and Relators. "Defendants" mean Accenture LLP, Accenture Ltd., and Proquire, LLC.

–1–

contact information for former employees and, instead, believe that the parties should agree to cooperate in locating and contacting their former employees.

2. <u>Date when mandatory disclosures were or will be made</u>

September 18, 2008.

**PLAINTIFFS:** Plaintiffs propose a joint telephone conference with the court and the parties to this action to address certain differences between the parties regarding their discovery obligations in this litigation.

**DEFENDANTS:** The Court has scheduled a telephone conference on September 10, 2008 to discuss the parties' respective positions set forth in their joint Rule 26(f) report.

Defendants believe it is premature to involve the Court in a telephone conference regarding any other perceived differences in the parties' discovery obligations. Discovery has just commenced, the parties have not met and conferred regarding any such perceived differences, and no party has brought a motion identifying such differences.

3. <u>Subjects on which discovery may be needed</u>

**PLAINTIFFS:** The scope of plaintiffs' discovery is focused on defendants' submission of false and fraudulent claims, breach of contract, and receipt of illegal and undisclosed kickbacks and conflicts of interest in connection with Government contracts. These illegal kickbacks, which were often conditional fees, are generally referred to by the Defendants as Systems Integration Compensation ("SI compensation").

**DEFENDANTS:** The scope of discovery should be dictated by the alleged false claims and contracts at issue. The alleged false claims and the contracts on which Defendants allegedly made them, in turn, will define the contracting agencies and organizations from which discovery will be taken. Within this context, Defendants anticipate that they will need discovery regarding:

- ♦ Plaintiffs' efforts to preserve documents and electronically stored information ("ESI");

- ♦ the contracts, subcontracts, or other agreements under which Plaintiffs contend Defendants submitted any false claims, including, but not limited to, the formation, source selection, negotiation, and implementation of those contracts;

- each alleged false claim and all supporting facts, including, but not limited to, any underlying conduct upon which Plaintiffs' premise their false claim allegations;

- the allegations in Plaintiffs' complaints and the bases for those allegations;

- Relators' knowledge regarding the allegations in their amended complaint;

- Plaintiffs' knowledge of Defendants' alleged conduct;

- Plaintiffs' knowledge of other entities' similar conduct as alleged in the complaints;

- Plaintiffs' knowledge of relevant industry practices;

- any duties or obligations Plaintiffs contend Defendants owed to Plaintiffs;

- Plaintiffs' knowledge and understanding of applicable law;

- Plaintiffs' alleged damages; and,

- Plaintiffs' experts, if any.

    4.   <u>Whether any party will likely be requested to disclose or produce information from electronic or computer-based media</u>

And if so:

(a)   Whether disclosure or production will be limited to data reasonably available to the parties in the ordinary course of business;

**PLAINTIFFS:** Yes, except for relevant, non-privileged, discoverable evidence that is no longer available from reasonably accessible sources, including but not limited to those sources not reasonably available that the parties have already preserved.

**DEFENDANTS:** Agreed. Defendants believe that Plaintiffs, and particularly the Government, did not act timely to preserve documents or ESI. If true, Plaintiffs should be required to undertake all appropriate actions necessary to prevent any prejudice to Defendants arising from Plaintiffs' failure to preserve documents or ESI.

(b)   Anticipated scope, cost and time required for disclosure or production of data beyond

what is reasonably available to the parties in the ordinary course of business;

To be determined based on what relevant, non-privileged, discoverable evidence the parties have maintained in reasonably accessible and not reasonably accessible formats.

      (c)      The format and media agreed to by the parties for the production of such data as well as agreed procedures for such production;

**PLAINTIFFS:** The parties shall cooperate to develop reasonably focused searches to identify relevant, non-privileged ESI responsive to discovery requests. Electronically stored information shall be produced in its native format, except as follows: ESI shall be produced in a reasonably usable form, *i.e.*, TIFF or PDF that is searchable by electronic means if it exists in those forms; production in TIFF or PDF should be accompanied by corresponding load files containing documents' respective metadata; and ESI created using Microsoft Excel or other spreadsheet software should always be produced in native format.

ESI shall be produced in a "logically unitized" format. This requires that a particular document capture all of its respective pages and that document relationships, such as a parent" document (*e.g.*, a fax cover sheet) and "children" attachments (*e.g.*, a faxed letter and attachment to the letter), be preserved.

Plaintiffs agree that discovery should proceed in accordance with the Federal Rules of Civil Procedure, but they do not agree with Defendants' characterization of the Federal Rules. Inspection of databases may be required.

**DEFENDANTS:** Because of Defendants' good faith efforts to preserve information, the potential volume of ESI may be high. The parties shall cooperate to develop reasonably focused searches to identify relevant, non-privileged ESI responsive to discovery requests.

Electronically stored information shall be produced in its native format, except that a party alternatively may produce ESI as Group IV, single-page TIFFs searchable by electronic means. Production in TIFF shall be accompanied by corresponding load files containing documents' respective metadata. Corresponding load files should be delivered in an ASCII text file with pipes (|) separating fields and carets (^) surrounding the field values. ESI created using Microsoft Excel or other spreadsheet software should be produced in native format.

ESI shall be produced in a "logically unitized" format. This requires that a particular document capture all of its respective pages and that document relationships, such as a "parent" document (*e.g.*, a fax cover sheet) and "children" attachments (*e.g.*, a faxed letter and attachment to the letter), be preserved.

Rule 34 permits the responding party to search its records to produce required, relevant, and responsive data. Rule 34 does not give the requesting party the right to conduct an intrusive search of the responding party's facilities, databases, etc. Absent proven discrepancies, inconsistencies, or wrongdoing, no party shall be entitled to inspect another party's facilities, databases, or enterprise systems. Any relevant and responsive ESI stored in databases shall be produced in native or text-delimited format.

> (d) Whether reasonable measures have been taken to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise;

**RELATORS:** Yes, Relators have taken reasonable measures by searching, identifying, and providing to their counsel the relevant and discoverable evidence.

We have not evaluated the adequacy of defendants' representations regarding the preservation of documents. We do not believe the Rule 26(f) conference is the appropriate forum for addressing the adequacy of the parties' preservation efforts.

**GOVERNMENT:** Yes. At the outset of this investigation, the Department of Justice sent a letter to several agencies informing them of the Government's investigation and requesting that they avoid destroying any documents or electronic information that could be relevant. In addition, the Government has sent further "document preservation" notices to the following agencies: DFAS, National Security Agency, Central Intelligence Agency, NASA, GSA, AFMCLO/JAF, DITCO, the Federal Election Commission, Defense Intelligence Agency, Internal Revenue Service, Department of the Navy, Department of Energy, DECA, the Smithsonian Institution, HUD, DLA, FERC, HHS, U.S. Transportation Command, the Department of State, the Department of Education, the Department of Agriculture, the Department of Homeland Security, and the Department of the Army.

The Government initially developed the list of recipients based on the information provided by the Relators, Accenture's responses to the Government's subpoena, and through its own investigation. This list has grown as the government has identified additional agencies with potential claims. The Government continues to evaluate information to determine when it is necessary and appropriate to send out a preservation letter to a newly identified entity.

The Government has requested that the agencies retain documents and materials potentially relevant to the litigation, including electronically stored information. If specific contracts were known to the government between the agency and the defendants, then the government used its best efforts to include contract numbers that it knew to be relevant and responsive.

The Government is working with the recipients of the hold notices, who have started (and in some cases, finished), their identification of the very extensive volume of documents and electronic media that are the subject of the hold. These recipients have identified, and continue to

identify witnesses that have discoverable information. Additionally, the recipients continue to identify and preserve relevant documents, as will be addressed in the Government's Initial Disclosures.

Subsequent to advising the agencies of the government investigation, agency personnel and the investigative team have exchanged communications (subject to privileges) to further identify and preserve relevant documents and to clarify the preservation instructions.

**DEFENDANTS:** The Government's Preservation Efforts –Although the Government indicates it sent document preservation notices between April 2007 and the present to its various agencies, the Government makes only passing reference to its pre-April 2007 preservation efforts, explaining that it sent a letter to "several agencies" advising them of its investigation and requesting that they avoid destroying information that could be relevant. The Government does not identify to which agencies it sent its letter or in what month or year it sent that letter.

As the Court is aware, the Relators filed this lawsuit in September 2004. Thus, the Government reasonably should have known as of September 2004 that its various agencies' documents likely would be relevant to this lawsuit and should have issued document preservation notices to those agencies at that time. Furthermore, well before April 2007, Accenture, in responding to a Government subpoena, discussed with the Government the importance of the Government's documents and contract files. If the Government failed to issue timely and adequate document preservation notices to its various agencies, Defendants' defense could be seriously prejudiced.

Defendants' Preservation Efforts – Defendants have taken reasonable measures to preserve potentially discoverable data from alteration or destruction. Defendants first received a subpoena related to this litigation on November 29, 2005. Thereafter, Defendants issued document preservation notices to individuals who were identified as having potentially responsive documents. As the Government provided additional direction regarding the scope of its subpoena, Defendants identified additional individuals who might possess potentially relevant materials and issued document preservation notices to them. In April 2007, Defendants were served with the Government's complaint in intervention. Defendants then issued additional document preservation notices based on the scope of the complaint in intervention. Of the recipients of the document preservation notices, Defendants will identify those primary custodians most likely to possess relevant, non-duplicative, and non-cumulative information.

With respect to ESI, Defendants also have worked to identify and preserve, among other things, appropriate email back up tapes, enterprise systems, and databases. Finally, Defendants have preserved hard copy documents maintained in storage facilities.

(e) other problems which the parties anticipate may arise in connection with electronic or computer-based discovery.

**PLAINTIFFS:** Plaintiffs expect that there may be disputes regarding the scope and format of document production. Plaintiffs reserve the right to address these issues after appropriate discovery.

**DEFENDANTS:** Defendants expect that there may be disputes concerning the number of document custodians whose files must be retrieved and searched to identify relevant documents. Defendants also expect that there may be disputes concerning reasonable search terms and search efforts. Defendants have already produced more than 400,000 pages of documents. The Government, on the other hand, has produced no documents at all.

Defendants believe that the Government did not timely implement adequate document preservation efforts. If Defendants' suspicions are correct, Defendants expect that the parties will be forced to address the Government's document preservation deficiencies with the Court.

5. <u>Date by which discovery should be completed</u>

**PLAINTIFFS:** December 15, 2009 (75 days before trial). Plaintiffs do not join in with any of Defendants' statements in Paragraph 5. Plaintiffs believe that there is sufficient time to bring dispositive motions before the Plaintiffs' proposed December 1, 2009 motion cut-off date.

**DEFENDANTS**: Defendants agree to this discovery cut-off date. Defendants are concerned, however, that the time between the discovery cut-off and trial may not be adequate for the Court to consider and address pretrial dispositive motions. Many issues in this case will involve statutory or contract interpretation issues that can and should be resolved via summary judgment or other dispositive motions. At an appropriate time, the parties and, Defendants respectfully submit, the Court may wish to alter the trial date to account for dispositive motions. This motions practice will narrow issues for trial.

6. <u>Any needed changes in limitations imposed by the Federal Rules of Civil Procedure</u>

**PLAINTIFFS:**

- Plaintiffs propose a limit of 75 depositions per side.

- Plaintiffs agree to the limitation of 25 interrogatories set forth in Federal Rule of Civil Procedure 33, "including all discrete subparts."

**DEFENDANTS:** It is premature to permit seventy-five depositions per side. Defendants

believe that they will require more than the ten depositions permitted under Federal Rule of Civil Procedure 30 given the number of contracts and agencies potentially at issue. However, Defendants believe that the parties will be in a better position to make informed decisions and determine the appropriate number of depositions after they have exchanged written discovery requests and responses and after responsive documents have been produced.

The limit of twenty-five interrogatories in Federal Rule of Civil Procedure 33 shall apply. To avoid potential discovery disputes regarding what constitutes a discrete subpart, Defendants propose that the subparts of an interrogatory do not count towards the limit.

7. <u>Any Orders, e.g., protective orders, which should be entered</u>

**PLAINTIFFS:** The parties believe that a Protective Order regarding use of documents in discovery is necessary. The parties have agreed to cooperate in good faith to have a Protective Order promptly issued, but there are disagreements between counsel that will require presentation of the differing proposed protective orders to the court. In addition, please see plaintiffs' last three points under Miscellaneous regarding motions for Protective Order.

**DEFENDANTS:** Defendants believe that a Protective Order regarding use of any documents produced in this litigation for any purpose is necessary. The parties will cooperate in good faith to have a Protective Order promptly issued, but they expect that they will have disagreements that will require resolution by the Court.

8. <u>Any objections to initial disclosures on the ground that mandatory disclosures are not appropriate in the circumstances of the action</u>

**PLAINTIFFS:** Plaintiffs will make an initial mandatory disclosure but anticipate a need to amend or supplement their disclosure upon receipt from defendants of necessary precursor information.

**DEFENDANTS:** Mandatory disclosures are appropriate.

9. <u>Any objections to the proposed trial date</u>

**PLAINTIFFS:** Due to the nature of the claims and denials, the parties anticipate the need for additional time to conduct the relevant discovery and respectfully request a March 1, 2010 trial date.

**DEFENDANTS:** Agreed, but Defendants are amenable to a later trial date should the Court determine more time will be necessary to address dispositive motions and narrow the issues for

trial. *See* Defendants' response to No. 5, *supra*.

          10.     <u>Proposed deadline for joining other parties and amending the pleadings</u>

**PLAINTIFFS:**    November 1, 2008 – for joining new parties.

        February 15, 2009 – for otherwise amending the pleadings. Because much of the evidence of defendants' wrongdoing rests exclusively with Defendants' and their alliances, the Government and Relators need formal discovery to assure that Defendants and their alliances produce all relevant evidence.

**DEFENDANTS:**    October 1, 2008 for joining new parties or otherwise amending the pleadings.

Relators filed this lawsuit in September 2004. The Government served a subpoena on Defendants in November 2005, after which Defendants produced more than 400,000 pages of documents to the Government. The Government intervened in December 2006 and filed a complaint in intervention in April 2007. In August 2007, Plaintiffs filed an amended complaint.

The Government and Relators have had more than four years to review Defendants' documents and identify any parties or additional claims to join in this litigation. In fact, Relators have had more than six years to review the "many thousands" of documents that Relator Norman Rille took from Defendants in contravention of the terms of his employment.

          11.     <u>Proposed deadline for completing discovery (typically no later than 60 days before trial)</u>

**PLAINTIFFS:**    The plaintiffs propose that disclosures should proceed in accordance with Federal Rule of Civil Procedure 26:

- Mutual Expert Disclosures and Reports – August 31, 2009.
  Each Party is required on this day to disclose experts on issues upon which they have the burden of proof. Defendants are mistaken that there are no issues upon which they have the burden of proof (see, e.g., affirmative defenses).

- Mutual Rebuttal Expert Disclosures and Reports – October 30, 2009.

- Discovery Cut-Off – December 15, 2009.

**DEFENDANTS:**    Because Plaintiffs bear the initial burden of proof to establish their claims,

–9–

expert disclosures should be phased and Plaintiffs should disclose and produce their expert report(s) first:

- Plaintiff Expert Disclosures and Reports – August 3, 2009
- Defendant Expert Disclosures and Reports – October 12, 2009
- Mutual Rebuttal Expert Disclosures and Reports – November 16, 2009
- Discovery Cut-Off – December 15, 2009

    12.    <u>Proposed deadline for filing motions other than motions for class certifications (typically no later than 60 days before trial)</u>

**PLAINTIFFS:** Except for motions in limine, all other motions shall be filed no later than December 1, 2009.

**DEFENDANTS:** Dispositive Motions shall be filed no later than December 21, 2009.

    13.    <u>Miscellaneous</u>

**PLAINTIFFS:**

- Pretrial Disclosure Sheets shall be filed no later than January 22, 2010.
- Objections to Pretrial Disclosure Sheets shall be filed no later than February 5, 2010.
- Agreed Set of Closing Jury Instructions shall be filed no later than February 19, 2010.
- The review of documents and/or ESI hereafter in connection with requests for production served hereafter shall not cause a waiver of any applicable privilege.
- Unless stated otherwise in this report, Plaintiffs agree to proceed with discovery under the requirements of the Federal Rules of Civil Procedure. Plaintiffs disagree with Defendants' efforts as set forth in this report to proceed otherwise with discovery, particularly with respect to the notice and timing of depositions. The cumbersome time process that Defendants propose would result in substantial time delays.

- The location of depositions should be determined by minimizing expense to the parties and maximizing the convenience to the witnesses.

- Relator Norman Rille has certain documents from the time he worked for Defendants. Those documents are almost entirely in electronic format (e.g.: emails and attachments, databases, summaries and many other documents numbering in the many thousands). Defendants have demanded the wholesale return of all such documents, records and data along with any copies of the same, asserting in blanket form that they are all confidential and privileged. In the meantime, Relators are preparing a copy of such relevant electronic documents to forward to Defendants.

- During Relator Rille's employment, Accenture provided a company laptop to him as he was expected to have access to documents, records and databases, particularly because of travel and interaction with clients. Accordingly, when the laptop used by Relator Rille was not properly functioning, he turned it into the Accenture Information Technology department. The department subsequently advised him that they had replaced the hard drive, reloaded the information and data onto the laptop and were providing Relator Rille with two backup DVDs. On occasion, Mr. Rille also backed up some of the electronic data in his possession onto CDs. It appears that most, if not all, of these records appear to be business documents, records and databases that are subject to normal discovery.

- A discreet number of the documents that Relator Norman Rille has from his time working for Defendants might have been authored by or otherwise refer to Defendants' in-house attorneys or Accenture's legal and commercial group. While Relators maintain that such documents are not privileged, Relators sent copies of those documents to Defendants and inquired whether Defendants maintained that any of the documents were subject to any privilege and the basis therefore. Defendants have made a blanket assertion of privilege (without providing basis) regarding those documents and demanded, among other things, that they and all copies be returned. To his knowledge Relator Rille has not met nor spoken with anyone introduced to him as an Accenture attorney. Unless this is resolved, Relators will file a motion for a protective order and seek a determination from the Court.

Court availability to address disputes while depositions are occurring would be welcome and very helpful. The parties should also agree to serve discovery requests and responses by e-mail and to accommodate prompt hearing dates. The parties should mutually commit to work in good faith to promptly address and resolve any questions regarding foundation and admissibility of evidence.

**DEFENDANTS:**   Defendants agree to Plaintiffs' proposed dates for pretrial disclosures and

to meet and confer with Plaintiffs to attempt to resolve discovery disputes before involving the Court. Defendants agree to accept service of discovery requests and responses by email and to accommodate prompt hearing dates.

### **Misappropriated Documents**

On July 31, 2008, Relators wrote to Defendants asking whether Defendants contended certain documents (the "Subject Documents") that Relators possessed were privileged. Because the Subject Documents were confidential, internal Accenture documents and none bore the bates numbers that Defendants had affixed to the documents produced to the Government, Defendants asked Relators how they had acquired the documents and demanded that Relators return the Subject Documents. Defendants also asked Relators to treat all of the Subject Documents as privileged until such time that Relators provided additional information concerning the source of the documents, because Accenture had no way of knowing whether the Subject Documents were attorney drafts or had been transmitted by or to attorneys as drafts.

In an August 25, 2008 email, Relators conceded that Rille had taken the Subject Documents from Accenture while he was an Accenture employee. Relators, however, did not provide any additional information concerning the source of the Subject Documents that would allow Accenture to adequately assess the privileged status of the documents.

Since August 25, 2008, Relators have admitted that Rille took and retained "many thousands" of internal Accenture documents. Pursuant to Rille's terms of employment with Accenture, Rille agreed that

> A. he would "not use Proprietary Information or use or disclose Confidential Information at any time, either during or after my employment by Andersen Consulting [Accenture's former name]";
>
> B. he would "not make copies of or otherwise reproduce Confidential Information unless there is a legitimate business need to do so";
>
> C. he had a duty to Accenture and "third parties, during my employment by [Accenture] and afterwards" to hold third-party, confidential information received by Accenture "in the strictest confidence and not to disclose or use it"; and
>
> D. "[u]pon the termination of [his] employment with [Accenture], or at any time requested," he would "promptly deliver to [Accenture] all copies of Proprietary and Confidential Information in [his] possession and control . . . and [would] not retain any copies of such Information or any portion thereof."

In a Conditions of Employment agreement, Rille also agreed that upon his "release or resignation," he would not "release, retain, copy, or utilize any confidential, privileged, or

–12–

proprietary information or property of [Accenture] or its clients."

In May 2002, after Rille's employment was terminated, Rille executed a Termination Certification in which he certified that he did "not have in [his] possession," nor had he "failed to return" "any information or materials intended to be of a confidential nature obtained during the course of [his] employment by Accenture" or "any records, documents, . . . proposals, or copies of them, or other documents . . . or other property belonging to Accenture, or any of its clients." Rille further certified that he had "complied with and [would] continue to comply with all the terms of Accenture's policies as set forth in the Accenture Policies database, and in particular the policies reflected therein relating to confidentiality and intellectual property rights."

Upon learning of Rille's misappropriation of Accenture's property, Accenture demanded the return of both the Subject Documents and all other documents that Rille misappropriated from Accenture while he was its employee. Relators, however, refuse to return the documents, instead agreeing only to provide copies.

Regardless of whether the Subject Documents are privileged – a determination that Accenture can make only after obtaining a better understanding of the source of the documents and whether they were transmitted by or to an attorney or constitute attorney drafts – Accenture is entitled to their return pursuant to its employment agreement with Rille. Furthermore, Accenture is entitled to the return of any and all documents that Rille took from Accenture while he was its employee, including the original copies of the two backup DVDs allegedly provided to Rille by Accenture and the original copies of any backups that Rille created himself of Accenture documents or data.

On September 3, 2008, Accenture again asked counsel for Relators to return the Accenture documents. If they do not, Accenture will file an appropriate motion with the Court.

### **DEFENDANTS' Deposition Proposals**

To avoid future discovery disputes concerning non-expert depositions, Defendants proposed that the parties include the provisions below in a Case Management Order. Plaintiffs, however, have refused to agree to these provisions (or even to suggest alternative provisions), and as a result, Defendants expect that the parties will be forced to raise with the Court potentially numerous discovery disputes regarding the timing, location, and method of taking depositions in this case:

- ♦ Unless otherwise agreed by the parties, depositions of a party's current or former employees will be taken in the appropriate place-of-business location as determined by such party's counsel.

- ♦ Only the time used by a party in actual questioning of a witness shall count towards that party's time limits on depositions set forth in Federal Rule of Civil Procedure 30. Time spent on breaks and discussion among counsel shall be excluded. These limitations apply only to parties in this case.

–13–

- Unless otherwise ordered by the Court or stipulated by the parties, all fact depositions shall be conducted in accordance with Federal Rule of Civil Procedure 30.

- 30(b)(1) Depositions of Current or Former Employees of the Parties. Unless otherwise agreed between the parties, a requesting party wishing to take the deposition of a current or former employee of a party shall inform the responding party in a letter that identifies the name of the person to be examined, if known, and, if the name is not known, a general description sufficient to identify the person or the particular class or group to which the person belongs. As soon as practicable, the responding party shall contact the requesting party with a proposed date or dates for the taking of the deposition, unless the party intends to move for a protective order regarding the deposition. With respect to requests for depositions of current employees, the parties agree to endeavor in good faith to provide a proposed date or dates within 10 business days from receiving the letter (except as agreed by the parties). When the deposition request letter does not identify the specific individual to be deposed, the responding party shall identify the witness testifying in response to the request. The parties shall confer regarding a mutually convenient time and place and the estimated length of the deposition. Absent good cause or agreement between the parties, the responding party shall propose a date or dates within 45 calendar days from the date of the requesting party's initial request. Any motion for a protective order shall be filed no later than 30 calendar days from receiving the requesting party's initial request. The filing of a motion for protective order shall stay the deposition, pending adjudication or other disposition of the motion. When the deposition is scheduled, the requesting party shall serve a notice of deposition on all parties.

- 30(b)(6) Depositions. Unless otherwise agreed between the parties, a requesting party wishing to take the deposition of a party under Rule 30(b)(6) shall send a letter to the responding party that describes with reasonable particularity the matters on which examination is requested, as required by Rule 30(b)(6). As soon as practicable but no later than 30 calendar days from receiving the letter (except as agreed by the parties), the responding party shall contact the requesting party, identifying the designated witness(es) and providing a proposed date or dates for the taking of the deposition, along with the party's objections to the topics, if any, unless the party intends to move for a protective order regarding the deposition. The parties shall confer regarding a mutually convenient time and place and the estimated length of the deposition. Absent good cause or agreement between the parties, the responding party shall propose a date or dates within 45 calendar days from the date of the requesting party's initial requests. Any motion for protective order shall be filed no later than 30 calendar days from receiving the requesting party's initial

–14–

request.  The filing of a motion for protective order shall stay the deposition, pending adjudication or other disposition of the motion.  When the deposition is scheduled, the requesting party shall serve a notice of deposition on all parties.

- Third Party Depositions.  A deposition of a third-party witness shall be initiated through service of subpoena under Rule 45.  The subpoena shall provide at least a twenty-one day notice of the initial setting of the deposition.  The requesting party shall confer with the third-party witness and opposing counsel regarding a mutually convenient time and place and the estimated length of the deposition.  When the deposition is scheduled, the party serving the subpoena shall notify all parties of the time and location of the deposition.

<u>Attorneys for Plaintiff United States of America</u>

Dated: September 3, 2008     By:     /s/ Don Williamson
Joyce R. Branda
Patricia Davis
Donald J. Williamson
Jordan L. Strauss
Attorney, Department of Justice
Civil Division
P. O. Box 261
Ben Franklin Station
Washington, D.C. 20044
(202) 514-7900

<u>Attorneys for Relators/Plaintiff</u>

WILSON, ENGSTROM, CORUM & COULTER
200 South Commerce, Suite 600
Post Office Box 71
Little Rock, Arkansas 72203
Telephone: (501) 375-6453

Dated: September 3, 2008     By:     /s/ Stephen Engstrom
Stephen Engstrom

                PACKARD, PACKARD & JOHNSON
                Von G. Packard (CA Bar No. 74877)
                Ronald D. Packard (CA Bar No. 72173)
                Lon D. Packard (CA Bar No. 74876)
                Four Main Street, Suite 200
                Los Altos, California 94022
                Telephone:  (650) 947-7300

Attorneys for Defendants

                MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
                425 West Capitol Ave., Suite 1800
                Little Rock, Arkansas  72201
                (501) 688-8800

Dated: September 3, 2008    By:     /s/ Anton L. Janik, Jr.
                Lyn P. Pruitt (Ark Bar No. 84121)
                Anton L. Janik, Jr. (Ark Bar No. 2007271)

                DICKSTEIN SHAPIRO LLP
                J. Andrew Jackson
                David M. Nadler
                1825 Eye St. NW
                Washington DC, 20006
                Tel:  (202) 420-2200