IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* NORMAN RILLE and NEAL ROBERTS,  *Plaintiff,*  vs.  ACCENTURE LLP; ACCENTURE LTD., and PROQUIRE, LLC,  *Defendants.* | ) ) ) ) ) ) ) Civil Action No. 4-04 CV0000985WRW ) ) ) ) ) ) |

**DEFENDANT ACCENTURE LLP'S MEMORANDUM IN OPPOSITION
TO UNITED STATES' MOTION TO DEPOSE NEIL J. BIRCHMEIER,
SHANIN L. HAGENE, STEVEN H. GOODMAN, AND STANLEY S. MATE
FOR FOURTEEN HOURS PURSUANT TO FED. R. CIV. P. 30(d)(1)**

Defendant Accenture LLP respectfully submits this memorandum in opposition to the United States' Motion To Depose Neil R. Birchmeier, Shanin L. Hagene, Steven H. Goodman, And Stanley S. Mate For Fourteen Hours Pursuant To Fed. R. Civ. P. 30(d)(1).

## INTRODUCTION

Courts require a party wishing to exceed the presumptive deposition time limit of seven hours set forth in Rule 30(d)(1) to make a specific showing of good cause for departing from that time limit. Indeed, cases have held that a request to exceed the presumptive time limit should be denied where, as here, the party seeking to extend the deposition has not yet even begun the deposition and actually found that the time limit set forth in the Federal Rules does not allow for a fair examination of the deponent. Here, the Government has failed to make any specific showing of good cause for extending the four depositions beyond the presumptive time

limit – instead, it has made unsupported accusations of alleged wrongdoing, coupled with conclusory assertions that the four deponents were "deeply involved" in that alleged wrongdoing.  Notwithstanding the fact that this case has been pending since 2004, and extensive discovery has already taken place, the Government does not cite any deposition testimony, interrogatory response, admission or other evidentiary support for any of its assertions.  Moreover, the Government cites no case law to suggest that its unsupported assertions constitute "good cause" for extending a deposition under Rule 30(d)(1).  In short, the Government has failed to meet its burden of justifying an order allowing it to exceed the presumptive deposition time limit under the Federal Rules.[1]  Therefore, the Government's motion should be denied.

## BACKGROUND

The Government bases its Motion on the accusation that Accenture received "illegal revenue" including "kickbacks" and "called the kickbacks it earned 'System Integrator Compensation' or 'SI Comp' and often referred to the other illegal revenue as 'Resale Revenue.'"  Motion at 2.  According to the Government, the presumptive time limit of seven hours set forth in the Federal Rules must be doubled with respect to four deponents on the ground that these individuals were "deeply involved" in these alleged "kickbacks."  The Government offers no evidence to support these accusations.

Contrary to the Government's suggestion that System Integrator Compensation ("SI Comp") and Resale Revenue were some sort of euphemism for "kickbacks" and "illegal

---

[1] The Government's request to double the amount of time allowed for these four depositions is particularly inappropriate given the extensive discovery that this Court has authorized – for example, the Court has allowed each side to take up to 75 depositions, *see* September 18, 2008 Minute Order (docket number 104) – which is more than sufficient to meet any legitimate need the Government may have.

revenue," in fact both SI Comp and Resale Revenue were well-known[2] and disclosed[3] industry practices. In order to establish that such practices violated the Anti-Kickback Act ("AKA"), the Government must prove, *inter alia*, that payments were made "for the purpose of improperly obtaining or rewarding favorable treatment in connection with" a Government contract. 41 U.S.C. § 52(2). In its Motion, the Government baldly asserts that the receipt of SI Comp and Resale Revenue were illegal under the circumstances of this case, but does not even attempt to prove it. The Government's assertions here are analogous to those rejected in *United States v. Burger*, 2000 WL 33910676, at *4-5 (N.D. Cal. June 6, 2000): "[T]he government's argument that defendant's actions were improper because they constituted a kickback reflects circular

---

[2] *E.g.*, Michael Haines, *Compensation Programs for Channel Services Sales Evolve Beyond Product Models: Focus Report*, Gartner, Aug. 6, 2003, at 2-3 (attached hereto as Exhibit A) ( "IT vendors predominantly compensate services sales channel partners using a multitier program that includes both referral (fee-based) and classic resale (discount and markup) components . . . . The two other prevalent models are based on payments of fees to the partner in exchange for referring services sales opportunities to the vendor. . . . [Companies may] resell[] the products or services of another company and provide[]defined services (the 'value add') related to the product resold. Typically, these services include the configuration, distribution, and logistics management, installation, and support of the product."); Michael Haines, *Channel Compensation Elements Must Evolve Beyond Revenue*, Gartner, Dec. 12, 2003 at 3 (attached hereto as Exhibit B) ("IT vendors have been selling their offerings, mostly hardware and software products, through the efforts of channel partners for nearly 25 years. The financial and compensation models for these programs are mature and have historically been based on a 'discount and markup' model, plus a few incentives – in essence, a revenue- and volume-based compensation model.").

[3] For example, Adaytum Software described, in its Form S-1 registration statement of August 7, 2000, an agreement "to pay Andersen Consulting a marketing assistance fee for any license sold in any industry or to any customer where Andersen Consulting either generated the sales lead or actively participated in the joint marketing efforts." Adaytum, Inc., Registration Statement (Form S-1), at 49 (Aug. 7, 2000) (attached hereto as Exhibit C). Similarly, in Accenture's 10-K for the fiscal year ending in August of 2001, it included among its revenues "the cost and margin earned on computer hardware and software resale contracts." Accenture, Ltd., Annual Report (Form 10-K), at 17 (Nov. 29. 2001) (attached hereto as Exhibit D). Moreover, alliance partner Docent stated in its publicly filed 10-K for fiscal year 2002, "[w]hen Accenture introduces Docent to prospective third party customers, Accenture is entitled to a portion of the contracted license fee if we sell a license directly to such prospective third party customers." Docent, Inc., Annual Report (Form 10-K), at 26 (Mar. 24, 2003) (attached hereto as Exhibit E).

reasoning.  In order to amount to a kickback under the statute, the behavior must be 'improper.'"  Here, the Government makes no showing that any practice was improper.  Although the supposed illegality of the practices of SI Comp and Resale Revenue and the four deponents' "deep" involvement in this alleged illegality is the lynchpin of the Government's argument in this Motion, the Government does not offer any proof that defendants' or deponents' conduct was illegal.

## ARGUMENT

I. **THE GOVERNMENT HAS FAILED TO MAKE THE REQUISITE SHOWING TO JUSTIFY DOUBLING THE PRESUMPTIVE DEPOSITION TIME LIMIT AS TO BIRCHMEIER, HAGENE, MATE OR GOODMAN**

   A. **Rule 30(d)(1) Requires A Showing Of Good Cause To Exceed The Presumptive Deposition Time Limit Of Seven Hours**

Pursuant to Rule 30(d)(1), "[d]epositions are presumptively limited to one day and must be completed within seven hours."  *General Electric Co. v. Indemnity Insurance Co. of North America*, 2006 WL 1525970, at *2 (D. Conn. May 25, 2006).  The party seeking additional time beyond the seven-hour time limit has the burden of establishing that it is "needed for a fair examination of the deponent."  *Beneville v. Pileggi*, 2004 WL 1631358, at *1 (D. Del. July 19, 2004); *see also* Advisory Committee Notes to 2000 Amendments to Federal Rules 30(d) ("The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order.").  If the movant fails to set forth a specific factual basis to justify additional time, the motion will be denied.  *See Beneville*, 2004 WL 1631358, at *1 (denying plaintiff's motion for additional time to depose defendant where plaintiff failed to provide evidence of the need for additional time "apart from *ad hominem* attacks" on defendant); *see also Cardenas v. Prudential Insurance Co. of America*, 2003 WL 21302960, at *2 (D. Minn. May 16, 2003) (denying motion where "Plaintiffs' brief spends

significant time arguing that they should receive additional time, but does not show why they require more time").

Courts repeatedly have held that the moving party has not established good cause for additional deposition time when it files a motion for additional time before it has begun the deposition and found that seven hours is inadequate to complete it. For example, in *Pratt v. Archstone Willow Glen Apartments*, 2009 WL 2032469 (N.D. Cal. July 10, 2009), the court held that defendants had not met their burden of establishing that additional time was needed for plaintiff's deposition, despite the fact that the deposition involved "many years of medical records" and multiple topics and claims, because defendants had not yet taken seven hours of deposition and found them to be inadequate. Similarly, in *In re Tennessee Valley Authority Ash Spill Cases*, 2010 WL 2757176 (E.D. Tenn. July 13, 2010), the court denied plaintiffs' motion for additional time to depose the CEO of defendant on the ground that the court had no basis for finding that additional time was needed because the deposition had not yet begun. Moreover, in *Brooks v. Motsenbocker Advanced Development, Inc.*, 2008 WL 2033712 (S.D. Cal. May 9, 2008), the court denied plaintiffs' motion to extend defendant's deposition by an additional 10.5 hours. Although the court noted that the deposition would cover events that took place over an eight year time period, it found insufficient basis to justify additional time because the deposition had not yet begun. The court ruled that, after seven hours of deposition had been completed, if this time proved insufficient plaintiffs could file a motion for additional time limited to 3.5 additional hours, rather than the 10.5 additional hours originally sought.

The Government also suggests that additional time should be allowed because the "preconditions for limitation" set forth in Rule 26(b)(2), such as cumulativeness, duplication, or excessive burden, have not been met. Motion at 4-6. This would turn the Rule 30(d)(1) standard

on its head. The Federal Rules do not establish a presumption that depositions should continue day to day until they become excessively duplicative or unduly burdensome; rather, they set a presumptive time limit of seven hours unless a party can establish a specific basis for exceeding that time limit. *E.g.*, *Beneville*, 2004 WL 1631358, at *1.

### B. The Government Has Failed To Make The Showing Necessary To Justify Extending The Depositions Under Rule 30(d)(1)

The Government has failed to meet its burden of demonstrating that more than seven hours is required for the depositions of Birchmeier, Hagene, Goodman, or Mate. It has not begun any of these four depositions, and therefore cannot show, as required by the case law cited above, that after a good faith effort it was unable to complete the depositions within the seven hour presumptive time limit set forth in Rule 30(d)(1). Nor has the Government explained what specific topics it intends to cover and why those topics cannot be adequately explored within the time limit. Furthermore, despite the extensive discovery that has already taken place, the Government does not cite any evidence in support of its motion. Instead, the Government relies on unsupported accusations of wrongdoing and equally unsupported assertions of the deponents' alleged involvement in this alleged wrongdoing. That is insufficient. *See Beneville*, 2004 WL 1631358, at *1 (plaintiff's "*ad hominem* attacks" on defendant were not sufficient basis to extend deposition of defendant past seven hours).

The only specific facts that the Government offers in its motion are the approximate number of documents for which each of the deponents were custodians: 8,000 for Hagene, 13,000 for Mate, 18,000 for Birchmeier and 56,000 for Goodman. These statistics in no way demonstrate how much time is required for a fair examination of these witnesses. Obviously, the Government has no intention of questioning these witnesses regarding more than a small fraction of the tens of thousands of documents for which each of them was the custodian. Tellingly, the

Government provides no information as to how many of these tens of thousands of documents it intends to actually use at the depositions. In the depositions that have already taken place, several deponents were custodians of thousands of documents, and all of these depositions were completed within one day. For example, Vincent Vlasho is the custodian of approximately 25,000 documents, Michael Swain is the custodian of approximately 18,000 documents, and Abigail Reyes Gakstatter is the custodian of approximately 14,000 documents, yet these three depositions were each completed within seven hours. Similarly, the Government has asked to depose David Hampe for only seven hours despite the fact that he is the custodian of approximately 21,000 documents. In fact, every deposition taken to date by either side has been completed within seven hours.

Apart from the number of documents for which they were custodians, the only information the Government offers about these deponents is their job descriptions, conclusory assertions to the effect that each deponent "had significant involvement in, and knowledge of each of the contracts at issue," and unsupported accusations of the deponents' alleged involvement in alleged wrongdoing. The Government offers no evidence to support their assertions. Nor does the Government cite a single case in which such a meager and conclusory showing was held sufficient to justify doubling the deposition time limit under Rule 30(d)(1).[4]

---

[4] The Government's argument that these four depositions should be extended because the Relators may have additional questions is also without merit. The 2000 Advisory Committee Notes to Rule 30(d) state that, in order to complete depositions within the seven-hour time limit set forth in the Federal Rules, "parties with similar interests should strive to designate one lawyer to question about areas of common interest." Here, the interests of the Government and Relators are essentially identical with respect to these four depositions, and the fact that Relators are represented by separate counsel does not justify extending the depositions.

In short, the Government has not met its burden of proving that additional time above the presumptive time limit set forth in Rule 30(d)(1) is "needed for a fair examination of the deponent."

## CONCLUSION

For the foregoing reasons, the United States' Motion To Depose Neil R. Birchmeier, Shanin L. Hagene, Steven H. Goodman, And Stanley S. Mate For Fourteen Hours Pursuant To Fed. R. Civ. P. 30(d)(1) should be denied.

Dated: November 29, 2010                            Respectfully submitted,


By: /s/ Lyn P. Pruitt
    Lyn P. Pruitt
    Ark. Bar No. 84121

Of Counsel:                                         Mitchell, Williams, Selig, Gates
J. Andrew Jackson (admitted *pro hac vice*)           & Woodyard, P.L.L.C.
*jacksona@dicksteinshapiro.com*                     425 West Capitol Ave., Suite 1800
Dickstein Shapiro LLP                               Little Rock, Arkansas  72201
1825 Eye St. NW                                     (501) 688-8800
Washington DC, 20006                                *lpruitt@mwsgw.com*
Tel:  (202) 420-2200
Fax:  (202) 420-2201

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

| | |
|---|---|
| **Jacquetta F. Bardacos**<br>jbardacos@packard.com | **Jenelle M. Beavers**<br>jenelle.beavers@usdoj.gov |
| **Michael Bierman**<br>mbierman@luce.com<br>tdelpomar@luce.com | **Jordan L. Strauss**<br>jordan.strauss@usdoj.gov |
| **Stephen C. Engstrom**<br>stephen@wecc-law.com<br>marilyn@wecc-law.com | **Jeffrey Wexler**<br>jwexler@luce.com<br>tdelpomar@luce.com |
| **Philip J. Favro**<br>pfavro@packard.com | **Donald J. Williamson**<br>don.williamson@usdoj.gov |
| **Craig H. Johnson**<br>cjohnson@packard.com | **Daniel W Packard**<br>dpackard@packard.com |
| **Brian R. Young**<br>brian.young4@usdoj.gov | **Shannon S. Smith**<br>Shannon.Smith@usdoj.gov<br>Paulette.Chappelle@usdoj.gov |
| **Linda McMahon**<br>linda.mcmahon2@usdoj.gov | Maria.Altadonna@usdoj.gov |
| **Jeehae Jennifer Koh**<br>jennifer.koh@usdoj.gov | **David M. Nadler**<br>nadlerd@dicksteinshapiro.com |
| **Lon D. Packard**<br>lpackard@packard.com | **Shirley Guntharp Jones**<br>shirley@wecc-law.com<br>lorraine@wecc-law.com |
| **Von G. Packard**<br>vpackard@packard.com<br>jsimmons@packard.com | **Ronald D. Packard**<br>rdpackard@packard.com |

And by United States Mail this same date to:

The Honorable John W. Cole
311 West Sunset Drive
Sheridan, AR 72150

                                                      /s/ Lyn P. Pruitt
                                                       Lyn P. Pruitt