IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. NORMAN RILLE AND NEAL ROBERTS<br><br>PLAINTIFFS<br><br>vs.<br><br>ACCENTURE, LLP, an Illinois Limited Liability Partnership, *et al*.<br><br>DEFENDANTS. | Civil Action 4:04-CV00985 WRW |

**RELATORS' STATEMENT OF POSITION IN OPPOSITION TO ACCENTURE'S MOTION FOR PROTECTIVE ORDER BARRING DEPOSITION QUESTIONS**

**I.   Introduction and Summary**

Relators support the Government's Opposition to Accenture's Motion for a Protective Order and endorse all the arguments made by the Government – particularly the section showing how the questions at issue are relevant to the case.  Although Plaintiffs are not required to establish that Accenture committed a crime as an element of the case, Plaintiffs do have a scienter requirement.  Plaintiffs must show that Accenture acted "knowingly"[1] when it submitted false claims.  If Plaintiffs can establish that Accenture's key people knew that it was a crime to solicit and accept the alliance benefits at issue in this case, then this would be relevant and compelling evidence establishing that Accenture acted "knowingly."  In addition to the points made by the Government, Relators now make a few supplemental points not made in the Government's papers.

---

[1] 31 U.S.C. §3729(b)(1), which defines "knowing" as actual knowledge, deliberate ignorance or reckless disregard for the truth.  No specific intent to defraud is required.

Accenture argues that the Government should not be allowed to ask about criminal behavior because there was nothing wrong with what Accenture did in the first place. Accenture argues that since there is nothing wrong with exchanging cash for influence on Government jobs, the only purpose of the Government's questions is to harass and intimidate the witnesses. To support this argument, Accenture attached Exhibits B through G in an effort to show that the practice of passing alliance benefits was well documented and in the public domain. This argument is flawed for the following reasons:

(1) The Court already ruled that the documents attached to Accenture's opposition papers do not disclose the misconduct alleged in this action. Accenture fails to mention that it previously attached Exhibits B through G to its prior Motion to Dismiss based on public disclosure,[2] which was denied by the Court. Thus, Accenture is attempting to have the Court overrule its explicit order on stating that these documents are "generic" and do not create a public disclosure.[3]

(2) Even if these documents had disclosed the wrongdoing, such would not immunize Accenture. A news report or SEC filing would not make everything Accenture did proper or legal.

(3) Accenture's argument requires the Court to simply assume that Accenture will prevail on the merits of the case. Thus, Accenture has asked the Court for a *defacto* summary judgment without presenting any evidence on this critical point. Granting Accenture's Motion would prevent the Government from asking questions regarding the Anti-Kickback Act ("AKA"), thereby undermining a key element of the Plaintiffs' case, all without Accenture satisfying any of the procedural requirements of Rule 56.

II. **Accenture Failed to Disclose to this Court that It Is Asking the Court to Overturn Its Prior Ruling.**

Once Accenture gets to the substance of its argument on page 8 of its Memorandum,[4] it states: "To the contrary, the receipt of SI Comp is a well-documented practice in the industry, and is very far removed from the sort of conduct that constitutes a crime under the AKA." (Accenture Memo, p. 8.)

---

[2] Doc. No. 168.

[3] Doc. No. 226.

[4] Doc. No. 377, p. 8.

-2-

Accenture then provides Exhibits B through G to argue that it was widely and publicly known that Accenture was receiving compensation for providing opportunities to its alliance partners on federal contracts.  What Accenture fails to disclose, however, is that approximately two years ago, Accenture attached each one of these exhibits (with a slight variation as to Exhibit G) to its Public Disclosure Motion against Relators for the exact same purpose – to show that the allegations in this case were well known to the public.  Each is compared as follows:

> Exhibit B to Accenture's current Motion is a 2-page document regarding Bell & Howell, and was Exhibit 59 to Accenture's Motion to Dismiss.
>
> Exhibit C to Accenture's current Motion is a 31-page document regarding Gartner, and was Exhibit 60 to Accenture's Motion to Dismiss.
>
> Exhibit D to Accenture's current Motion is a 30-page document also regarding Gartner, and was Exhibit 62 to Accenture's Motion to Dismiss.
>
> Exhibit E to Accenture's current Motion is a 2-page document regarding Adaytum Software's SEC filings, and was Exhibit 19 to Accenture's Motion to Dismiss.
>
> Exhibit F to Accenture's current Motion consists of 3 pages from Accenture's 8-31-01 annual filing, and was included as part of Exhibit 67 to Accenture's Motion to Dismiss.
>
> Exhibit G to Accenture's current Motion consists of 3 pages from Docent's annual 12-31-2002 SEC filing, and Exhibit 21 to Accenture's Motion to Dismiss consists of the same SEC filing. While the first page is the same, the subsequent two pages are different, though they each deal with Docent's agreements with Accenture.

The Court explicitly rejected Accenture's arguments that these documents publicly disclose the allegations made in this case.  Regarding these Exhibits, the Court's Order of April 3, 2009 states:

> Defendants contend that the more than 70 exhibits filed in support of their Motion are evidence of public disclosure.  I disagree.  The exhibits are generic, and do not contain any of the specific information necessary to be a "public disclosure."[5]

---

[5] Doc. No. 226, pp. 1-2.

Since Accenture has failed to provide any new evidence as to why this Court should reconsider or overturn its prior ruling on these exhibits (much less on a timely basis), Accenture's Motion for a Protective Order should be denied.[6]

### III. Accenture Is Essentially Asking this Court to Grant *De Facto* Summary Judgment by Preventing the Government from Asking Relevant Questions.

Accenture has done more than ask the Court to prevent the Government from using the word "crime" in a deposition; it has asked the Court to prevent any line of questioning that has the potential to suggest or implicate Accenture in any criminal activity. Since most of Accenture's misconduct violates at least one criminal statute, this swallows up the whole case. Accenture's motion is a thinly disguised effort to prevent the Plaintiffs from developing the evidence connected to most of Accenture's wrongdoing. Accenture apparently recognizes this problem and promises the Court that, when the time is right, it will file a summary judgment motion. According to Accenture, its summary judgment motion will attempt to show that, as a matter of law, there was nothing wrong with taking alliance benefits in exchange for influence on Government jobs. In the meantime, however, Accenture asks the Court to bar discovery on these very points – particularly as to the issue of Accenture's knowledge – so that when it does file its summary judgment motion, Plaintiffs will have no deposition testimony on the issue. Accenture's position is even more absurd in light of the documents attached by the Government showing that Ms. Mascolo and others knew that the payments at issue in this case were criminal violations. Whether this is considered a request for summary judgment without compliance with Rule 56's requirements, or merely an attempt to direct this Court on how the trial should be handled, the motion is inappropriate and should be denied.

---

[6] There is no substantive difference between whether these documents triggered "public disclosure" as to Relators, or whether they were "well documented" and publicly known practices in the business community. None of these documents evidence that there was public knowledge of any giving and receiving of kickbacks between individuals or corporations in the federal space with active concealment from the Government.

**IV.     Conclusion**

The timing of Accenture's Motion is highly suspect.  As well evidenced by the Government's Opposition, this Motion was really prompted by Accenture's decision to unilaterally walk out of a deposition that was going badly for them.  Ms. Mascolo had boxed herself into a corner, and when Mr. Williamson had the documents showing that she was being less than candid, Accenture terminated the deposition pretending to be surprised at the Government's questions.  Thus, despite its obvious lack of merit, Accenture had no choice but to file this Motion as a way of providing cover for its actions.  As documented by Relators in their November 24, 2010, letter to the Court and in the Government's Opposition,[7] the facts show that Accenture, its key employees, and its counsel have known since the outset that kickback activity could potentially create criminal exposure for the individuals who participated in this conduct.  There are dozens of internal Accenture documents explaining that Accenture's kickback activity could create criminal liability, with words explicitly suggesting that Accenture employees could potentially go to jail for their conduct.  Additionally, there have been repeated SEC filings by Accenture which acknowledge that this lawsuit could lead to a criminal prosecution.  Indeed, Accenture has known for many months that the Relators cooperated with the DCIS (Defense Criminal Investigative Service) to have tape recordings done of Accenture employees.  It was no surprise to Accenture that its employee-witnesses would be questioned about their own documents – including the portions showing Accenture knew that its conduct was criminal.  Relators submit that the Court should see Accenture's conduct for what it is and deny the Motion.

---

[7] Doc. Nos. 395-396.

Respectfully submitted,

BY: /s/ Ronald D. Packard
    Ronald D. Packard (CA SBN 72173)
    Von G. Packard (CA SBN 74877)
    Daniel W. Packard
    PACKARD, PACKARD & JOHNSON
    Four Main Street, Suite 200
    Los Altos, California 94022
    (650) 947-7300 (Telephone)
    (650) 947-7301 (Facsimile)
    rdpackard@packard.com

*- and -*

WILSON, ENGSTROM, CORUM & COULTER
200 South Commerce, Suite 600
Post Office Box 71
Little Rock, Arkansas 72203
(501) 375-6453 (Telephone)
(501) 375-5914 (Facsimile)
Stephen Engstrom (ABN 74047)

*- and -*

Lon D. Packard
Craig H. Johnson
PACKARD, PACKARD & JOHNSON
2825 Cottonwood Parkway, Suite 500
Salt Lake City, Utah 84121

*- and -*

Michael Bierman
Jeffrey Wexler
LUCE, FORWARD, HAMILTON & SCRIPPS
601 South Figueroa, Suite 3900
Los Angeles, California 90017

**Attorneys for Relators/Plaintiffs**

# **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document will be served via electronic notification to the following counsel of record on the 30th day of November, 2010:

- **Jason Wallach**
  wallachJ@dicksteinshapiro.com

- **Justin A. Chiarodo**
  Chiarodoj@dicksteinshapiro.com

- **J. Andrew Jackson**
  Jacksona@dicksteinshapiro.com

- **Anton Leo Janik, Jr.**
  ajanik@mwlaw.com, lheaslet@mwlaw.com

- **David M. Nadler**
  nadlerd@dicksteinshapiro.com

- **Deborah Goldstock Ringel**
  ringeld@dicksteinshapiro.com

- **Joseph Berger**
  bergerj@dicksteinshapiro.com

- **Adam Proujansky**
  proujanskya@dicksteinshapiro.com

- **Lyn Peeples Pruitt**
  lpruitt@mwlaw.com, bhopper@mwlaw.com

- **Shannon S. Smith**
  Shannon.Smith@usdoj.gov, Maria.Altadonna@usdoj.gov

- **Donald J. Williamson**
  don.williamson@usdoj.gov

- **Linda McMahon**
  linda.mcmahon2@usdoj.gov

- **Brian R. Young**
  Brian.Young4@usdoj.gov

- **Jeehae Jennifer Koh**
  Jennifer.Koh@usdoj.gov

- **Jenelle M. Beavers**
  jenelle.beavers@usdoj.gov

          /s/ Ronald D. Packard
              Ronald D. Packard