IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* NORMAN RILLE and NEAL ROBERTS,<br><br>*Plaintiff*,<br><br>vs.<br><br>ACCENTURE LLP, ACCENTURE LTD., and PROQUIRE, LLC,<br><br>*Defendants*. | Case No. 4-04 CV0000985BRW |

**MEMORANDUM IN SUPPORT OF ACCENTURE'S MOTION TO
COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO
ACCENTURE DOCUMENT REQUESTS, AND TO SHORTEN RESPONSE TIME FOR
MOTION PURSUANT TO LOCAL RULE 7.2(b)**

Accenture respectfully submits this Memorandum in support of its motion to compel production of documents responsive to Requests 38 and 39 of Accenture's August 2008 First Set of Document Requests and Request 10 of Accenture's June 2009 Second Set of Document Requests, which seek historical GSA Schedule pricelists. These historical GSA Schedule pricelists are important to rebut the Government's assertion of actual damages, and are needed for upcoming expert reports and testimony relating to these issues. The Government indisputably has such pricelists in its possession, but has failed to produce all but a small handful. The Government has rejected Accenture's repeated requests for these documents, despite Accenture's efforts to narrow the scope of its requests and ease any burden on the Government. Therefore, this Court should order the Government to produce the requested documents.

Because the requested documents are needed for expert reports, Defendants respectfully request pursuant to Local Rule 7.2(b) that the time for Plaintiff to respond to this Motion be set for Wednesday, April 6, 2011.

## BACKGROUND

The General Services Administration manages the GSA Schedules Program, which provides Federal agencies "with a simplified buying process for obtaining commercial supplies and services at prices associated with volume buying."  *See* 48 CFR § 8.402(a).  Interested vendors submit proposals to GSA that include a list of items and proposed prices, along with information to help GSA determine whether the prices offered are fair and reasonable.  For all items ultimately listed on a vendor's GSA Schedule pricelist, GSA "has already determined the prices . . . to be fair and reasonable."  *See* 48 CFR § 8.404(d).  GSA's Director of Acquisition Operations for General Supplies and Services acknowledged that GSA Schedules reflect the Government's determination that offered prices are fair and reasonable.  *See, e.g.*, Transcript of Jeff Koses at p. 50, l. 11-21.

Accenture's document requests seek documents related to the GSA Schedules of third-party vendors, including vendors' historical GSA Schedule pricelists.  Request number 38 from Accenture's First Set of Document Requests, dated August 21, 2008, seeks documents "related to the Government's determinations of price reasonableness" in connection with the use of any vendors' products for which the Government believes Accenture is liable.  The Government stated in response to this request that it would "produce all non-privileged documents" that discuss price reasonableness in connection with the federal contracts for which it seeks damages from Accenture.  Request number 39 from Accenture's First Set of Document Requests seeks documents "related to the Government's decision to purchase third-party products through [Accenture]."  The Government stated in response to this request that it would

"produce non-privileged responsive documents." Request number 10 from Accenture's June 18, 2009 Second Set of Document Requests asks for all documents in the possession of GSA concerning, among other things, the Government's acquisition of information technology from Systems Integration Consultants, including Accenture. The Government stated in response to that request that it would produce "relevant and responsive" documents pertaining to the GSA Schedule that is at issue in this case.

Contrary to these representations, in the more than 20 months since these requests were served the Government has produced only a tiny handful of documents associated with the GSA Schedules of vendors that it has put at issue by seeking damages for Accenture invoices that included those vendors' products. The Government concedes it maintains historical GSA Schedule pricelists but refuses to produce them.

On September 27, 2010, counsel for Accenture sent a letter to the Government pointing out that it had not received historical GSA Schedule pricelists responsive to its Requests, including those of SAP, Manugistics, Hewlett Packard, EMC, ePlus, Sun, Compaq, Cisco, and others.[1] The Government responded by e-mail October 4, 2010, stating the relevance of the Schedules "depended on Accenture's defenses" and that the request was burdensome. On November 3, 2010, counsel for Accenture sent another letter to the Government, explaining that the requested GSA Schedule pricelists were relevant as they reflect prices the Government determined were fair and reasonable, as well as the value the Government believed it received from the products purchased from Accenture.[2] The letter also offered to narrow the scope of the request to alleviate any burden concerns the Government had.

---

[1] *See* Letter dated September 27, 2010 from Jason Wallach to Linda McMahon and Don Williamson, attached as Exhibit A hereto.

[2] *See* Letter dated November 3, 2010 from Jason Wallach to Linda McMahon and Don Williamson, attached as Exhibit B hereto.

3

Following the Government's continued failure to produce the requested Schedule pricelists, Accenture counsel wrote a third letter on February 17, 2011 again seeking those documents and indicating its intent to file a motion to compel were the Government to continue its refusal to produce.[3] On a teleconference one week later, counsel for the Government indicated that the Government had produced GSA Schedules for SAP and Manugistics and that it would produce the Schedules for HP, AMS, EMC, Compaq, Oracle and Sun. The Government also requested a list of all the Schedules Accenture needed. Accenture counsel provided that list March 7, 2011.[4] As of March 30, 2011, the Government had only produced some historic GSA Schedules for Oracle. The Government has yet to produce the vast majority of relevant and responsive Schedules to which it is entitled.

The historical GSA Schedule pricelists that Accenture has requested will rebut the Government's damages claims because they will show both 1) that prices paid by the Government for third-party products from Accenture were fair and reasonable and 2) that the Government did not suffer any damages as a result of purchasing third-party products through Accenture. The Government's production of these documents is long overdue and Accenture urgently needs them.

## ARGUMENT

I. **Accenture Is Entitled To Documents Responsive to Requests 38 and 39 of Its First Set of Document Requests and Request 10 of Its Second Set of Document Requests**

Accenture is entitled to the discovery that it seeks regarding the Government's historical GSA Schedule pricelists because such information is relevant to any damages for which Accenture might be found liable under the False Claims Act.

---

[3] *See* Letter dated February 17, 2011 from Jason Wallach to Linda McMahon and Don Williamson, attached as Exhibit C hereto.

[4] See e-mail from Jason Wallach to Don Williamson dated March 14, 2011, attached as Exhibit D hereto.

Generally, "parties may obtain discovery regarding any matter, not privileged, so long as it is 'relevant to the subject matter involved in the pending action.'" *Keaton v. Prop. & Cas. Ins. Co. of Hartford*, No. 4:07-CV-634-BSM, 2008 WL 2519790, at *1 (E.D. Ark. June 20, 2008).

> The phrase "relevant to the subject matter involved in the pending action" has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, an issue that is or may be in the case. The scope of discovery is not limited to the issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is the scope of discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

*Id.* (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).

The historical GSA pricelists of third-party vendors that Accenture seeks are relevant and discoverable because the Government seeks False Claims Act damages for invoices submitted by Accenture that included those vendors' products. If a violation of the False Claims Act is proven, damages are the difference between the value of what the Government actually received and what it should have received under its contracts with defendant. *United States v. Bornstein*, 423 U.S. 303, 316 n.13 (1976); *United States v. Cooperative Grain & Supply Co.*, 476 F.2d 47, 63 (8th Cir. 1973); *United States v. Advance Tool Co.*, 902 F. Supp. 1011, 1017 (W.D. Mo. 1995), *aff'd*, 86 F.3d 1159 (8th Cir. 1996). This principle was recently reiterated in *United States v. Science Applications International Corp.*, 2010 WL 4909467, at *18 (D.C. Cir. Dec. 3, 2010):

> In a case where the defendant agreed to provide goods or services to the government, the proper measure of damages is the difference between the value of the goods or services actually provided by the contractor and the value the goods and services would have had to the government had they been delivered as promised. . . .
>
> To establish damages, the government must show not only that the defendant's false claims caused the government to make payment that it

would have otherwise withheld, but also that the performance the government received was worth less than it believed it had purchased.

The historical GSA Schedule pricelists Accenture requested in Requests 38 and 39 of its First Set of Document Requests and Request 10 of its Second Set of Document Requests bear directly on this issue, as they are highly probative of the Government's assessment of the value of the goods and services it purchased from Accenture and the Government's assessment that Accenture's offered prices were fair and reasonable. Despite repeated inquiries and efforts by Accenture to facilitate the production of these documents, the Government has not produced them. Therefore, the Court should order the Government to produce all historical GSA Schedule pricelists identified in Exhibit D the Government has not already produced forthwith.

## II. The Court Should Limit The Time To Respond To This Motion

Accenture has requested the documents at issue for years. These documents are needed for Accenture to rebut the Government's expert reports, for which the deadline is April 24, 2011, and to revise Accenture's affirmative reports, if needed. By requiring, pursuant to Local Rule 7.2(b), that the Government respond to this motion no later than April 6, 2011, the Court will allow the Government sufficient time to respond to this motion, while ensuring that the motion is ripe for prompt adjudication.

## CONCLUSION

For the foregoing reasons, Accenture's motion should be granted.

Dated:  March 30, 2011                     Respectfully submitted,

                                                 By:   /s/ Lyn P. Pruitt
                                                      Lyn P. Pruitt
                                                      Ark. Bar No. 84121

Of Counsel:                                                        Mitchell, Williams, Selig, Gates
J. Andrew Jackson (admitted *pro hac vice*)           & Woodyard, P.L.L.C.
*jacksona@dicksteinshapiro.com*                         425 West Capitol Ave., Suite 1800
David M. Nadler (admitted *pro hac vice*)           Little Rock, Arkansas  72201
*nadlerd@dicksteinshapiro.com*                          (501) 688-8800
                                                                    *lpruitt@mwsgw.com*
Dickstein Shapiro LLP
1825 Eye St. NW
Washington DC, 20006
Tel:  (202) 420-2200
Fax:  (202) 420-2201

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

**Jacquetta F. Bardacos**
jbardacos@packard.com

**Michael Bierman**
mbierman@luce.com
tdelpomar@luce.com

**Stephen C. Engstrom**
stephen@wecc-law.com
marilyn@wecc-law.com

**Philip J. Favro**
pfavro@packard.com

**Craig H. Johnson**
cjohnson@packard.com

**Brian R. Young**
brian.young4@usdoj.gov
**Linda McMahon**
linda.mcmahon2@usdoj.gov

**Jeehae Jennifer Koh**
jennifer.koh@usdoj.gov

**Lon D. Packard**
lpackard@packard.com

**Von G. Packard**
vpackard@packard.com
jsimmons@packard.com

**Jenelle M. Beavers**
jenelle.beavers@usdoj.gov

**Jordan L. Strauss**
jordan.strauss@usdoj.gov

**Jeffrey Wexler**
jwexler@luce.com
tdelpomar@luce.com

**Donald J. Williamson**
don.williamson@usdoj.gov

**Daniel W Packard**
dpackard@packard.com

**Shannon S. Smith**
Shannon.Smith@usdoj.gov
Paulette.Chappelle@usdoj.gov
Maria.Altadonna@usdoj.gov

**David M. Nadler**
nadlerd@dicksteinshapiro.com

**Shirley Guntharp Jones**
shirley@wecc-law.com
lorraine@wecc-law.com

**Ronald D. Packard**
rdpackard@packard.com

                */s/* Lyn P. Pruitt
                Lyn P. Pruitt