IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel*. NORMAN RILLE AND NEAL ROBERTS, <br><br> PLAINTIFF, <br><br> v. <br><br> ACCENTURE, LLP, an Illinois Limited Liability Partnership, *et al*., <br><br> DEFENDANTS. | Civil Action 4:04-CV-00985 BRW |

---

## UNITED STATES' OPPOSITION TO ACCENTURE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO ACCENTURE DOCUMENT REQUESTS

The United States, through its undersigned counsel, submits this Opposition To Accenture's Motion To Compel Production of Documents Responsive To Accenture Document Requests, dated March 30, 2011 (Accenture Motion). The Accenture Motion is without basis and should be denied. The documents that Accenture now seeks are not relevant to any claim or defense being litigated in this case, nor are they likely to lead to the discovery of admissible evidence, and are thus not discoverable. In fact, the documents now sought by Accenture are so far from relevant, Accenture never even issued a document request that can fairly be said to call for the production of these documents. Instead, with less than a month to go in discovery Accenture seems intent on causing the United States to undertake discovery activity so burdensome that it could not possibly be complied with without a significant extension of the

discovery schedule.  The United States has already produced hundreds of thousands of pages of

documents that address the issues and facts that purportedly underlie the Accenture Motion.

These documents set forth in detail the pricing considerations relevant to the transactions at issue

in this litigation.  For the reasons set forth below, the Accenture Motion should be denied.

## BRIEF INTRODUCTION

The United States has produced more than 1.5 million documents in this lawsuit.  These

documents have been gathered, processed and produced over the past two years from the hard

copy and electronic files of 21 federal government agencies.  These documents address each and

every transaction that is at issue in this case.  To the extent that the pricing of hardware and

software products are at issue on any of these transactions, the complete and precise manner in

which the pricing for those products was proposed, negotiated and agreed to is set forth in the

documents that have been produced by these agencies.

Accenture's motion ignores the history and completeness of the production to date and

seeks to add the the production of  "historical GSA Schedule Pricelists" it now claims are

responsive to three document requests it has issued in discovery.  In its motion, Accenture does

not actually set forth the requests it seeks to compel, it only paraphrases them in an inaccurate

fashion.  The actual requests are as follows:

From its First Request for Production of Documents, Accenture requested that the United
States:

38.     *Produce any and all documents related to the Government's determinations of*
        *price reasonableness, adequacy of competition, or best value in connection with*
        *the use of Defendants or any of the vendors, subcontractors, or Alliance partners*
        *on each and every Government Contract under which You believe Defendants are*
        *liable to the Government for damages and/or penalties in this action, including,*
        *but not limited to, the  mandatory determinations and annual reviews required in*
        *connection with Federal Supply Schedule purchases and Blanket Purchase*
        *Agreements.*

39.     *Produce any and all documents related to the Government's decisions to purchase third-party products through Defendants, rather than directly from the third party, for reasons of greater flexibility, better price, or any other reason.*

From its Second Request for Production of Documents, Accenture requested that the United States:

10.     *Produce any and all Documents in the possession, custody or control of the U.S. General Services Administration (GSA) (including without limitation reports, studies, analyses, memoranda, surveys, market research, recommendations, guidance, or related documents) concerning:*
*a. Accenture;*
*b. the payment of SI Compensation by or between Technology Vendors and Systems Integration Consultants;*
*c. Resale Revenue earned by Technology Vendors and/or Systems Integration Consultants;*
*d. Alliance Agreements by or between Technology Vendors and Systems Integration Consultants; and*
*e. the Government's acquisition of information technology from, by, or through Systems Integration Consultants.*

From these three requests, Accenture claims to be entitled to, and seeks to compel, the production of "historical GSA price lists" from 55 federal government contracts.[1]  Accenture makes no effort whatsoever in its Motion to identify what particular transactions at issue in this case it claims these documents are responsive to.  Accenture makes no effort to identify the particular products it claims to need pricelists for.  Accenture makes no effort to identify what an "historical price list" is or whether the GSA contracts at issue even had pricelists on the

---

[1]  Accenture claims at several points in its Motion that it has been seeking these documents for months.  The true facts, as well as its own exhibits belie this assertion.  In November 2010, Accenture identified only five "GSA Schedules" it was seeking, all of which pertained to the Government's allegations on the DLA contract. *See* Accenture Motion, Exhibit B.  It tied the request for these schedules, and any others, to Government's assertion that these schedules were used by Accenture on the DLA contract.  The Government met and conferred with Accenture counsel and offered to make the HP GSA Schedule available for review so that Accenture could better assess its lack of relevance.  Then, on February 17, 2011, this list grew to 27 contracts.  Accenture Motion, Exhibit C.  It was only on March 14, 2011, two weeks before it filed this motion and with less than two months remaining in discovery, that Accenture unleashed a list that had doubled in size in a month and would take the Government months of significant efforts to gather and produce. Accenture Motion, Exhibit D.

Schedules in question during the time frames cited.[2]  Accenture makes no effort to identify the

GSA Contract Numbers of many of the vendors and includes contracts on its list that it knows do

not exist.[3]  Accenture makes no effort to identify or limit the particular time frame for which it

claims the price list is relevant (or tie it to a particular transaction) but instead seeks unlimited

pricelists for periods of up to six years.  Accenture does not limit its requests to particular items

or particular product lines but instead seeks an order compelling the production of "all historical

GSA Schedule Pricelists" from a lengthy list of vendors.[4]

Accenture ignores all of this detail.  Instead, the Accenture Motion merely makes a

blanket statement that "the historical GSA pricelists of third-party vendors that Accenture seeks

are relevant and discoverable because the Government seeks False Claims Act damages for

invoices submitted by Accenture that included those vendors' products." Accenture Memo at p.

5.

It is important in considering the merits of the Accenture Motion to recognize precisely

how GSA Schedules are utilized by the United States Government.  The General Services

Administration (GSA) enters into Schedule contracts with vendors of commercial items like the

hardware and software at issue here.  As Accenture notes on page 2 of its Memo, GSA negotiates

pricing with vendors that it determines to be "fair and reasonable."  Accenture fails to mention,

however, that this determination is very limited in its scope and entirely separate from the actual

---

[2]For example, the e-Plus Contract on Accenture's list (5047H), is a leasing schedule that does not have any "price list" associated therewith.
[3]For example, Accenture counsel has been told and acknowledged that Cisco did not have a GSA Schedule during the relevant time frame.  Nevertheless, Accenture seeks an order from this Court compelling the production of a contract that it knows and has acknowledged does not exist. See Accenture Exhibit D (Cisco 4389G)(there never has been a Cisco GSA Schedule with that number-it belongs to Comstor.  As Accenture knows, Cisco did not have a GSA Schedule during the relevant time period.
[4]Many of the vendors identified by Accenture had large product lines with hundreds of products that were modified on almost a monthly basis.  These vendors would have hundreds of pricing matrices for its product lines that would run in the thousands of pages.

purchase of products off of those schedules.  The determination of price reasonability is solely

with respect to items purchased in quantities up to a certain pricing threshold (maximum order

threshold) and only with respect to products purchased subject to the terms and conditions of the

GSA Schedule.  *See* 48 CFR §8.404 (Part 8.4 applies only to purchases "against Federal Supply

Schedules" and instructs purchasing agencies to seek price reductions for orders "exceeding the

maximum order threshold.")   In other words, the schedule price determination applies only to

products purchased off the schedule and only in small quantities.

Importantly, the *actual* purchases of products by various agencies do not involve the

GSA personnel or its files. Instead, Purchasing Agency contracting personnel negotiate and enter

into task orders for particular items, on particular dates, for particular amounts, at negotiated

prices.  Accenture's Motion fails to inform the Court that the Federal Acquisition Regulations

(FAR) it cites to explicitly instruct and/or require agency personnel to seek better discounts and

lower prices depending upon the circumstances of their particular transactions.  Purchasing

Agency personnel are also explicitly tasked with concluding that a particular order "represents

the best value and results in the lowest overall cost alternative (considering price, special

features, administrative costs, etc.) to meet the Government's needs."  48 CFR §8.404 .   It is

only through this transaction specific process, carried out by the agency contracting personnel

and not the GSA, that fair and reasonable pricing for *particular transactions* is arrived at.  Thus,

contrary to the asserted factual basis purportedly justifying Accenture's efforts to obtain GSA

Schedule Pricelists, the analysis of whether the pricing for a particular purchase of products by a

government agency is fair and reasonable under the specific circumstances of that transaction is

performed by the contracting officials at each agency that is conducting the purchase and not by

the GSA. These agency transactions are where the prices and terms for the transactions at issue

in this litigation were determined.  Most importantly therefore, to the extent that Accenture is

seeking to discover the prices that were determined to be fair and reasonable for the transactions

that are issue in this case, the location of that information resides with the agencies that made

those actual purchases and has already been produced to Accenture in this litigation.

It is also important to understand that the GSA does not receive information or

documents about the particular transactions that are purchased off of the GSA Schedules.  As

counsel for the United States has explained on many occasions to Accenture counsel, the only

source for this data is the vendors themselves.  Indeed, the vendors are the only party that

maintains actual sales data of dates, agencies, prices, quantities and discounts for the actual sales

of all products made off of the GSA Schedules.

**ARGUMENT**

**I.      The documents sought by Accenture are not responsive to its Requests.**

The GSA Schedule documents sought to be compelled by Accenture are not responsive to the

Document Requests cited by Accenture in its motion.  Apparently recognizing that fact,

Accenture chooses to paraphrase the actual requests inaccurately.  The United States sets forth

these requests in full above.

Requests 38 and 39 explicitly refer to price reasonableness decisions made by the purchasing

agencies involved in the transactions at issue in this case.  These documents have all been

produced long ago.  Request 38 refers specifically to and is limited to the determinations made

"*on each and every Government Contract under which You believe Defendants are liable to the

Government for damages and/or penalties in this action.*"  As noted above, this determination is

the determination made by the contracting officials at the purchasing agency – not the GSA.

These documents have been produced and do not include GSA documents.  Request 39 explicitly

6

refers to documents relating to a comparison by the purchasing agency of the possible sources of

a particular item.  In the Accenture Motion, Accenture leaves out half of the request and does not

include the "rather than" comparison language.  Again, the documents responsive to this request

are the documents created and maintained by the purchasing agency and not the GSA.  These

documents have been produced. Accenture Requests 38 and 39 do not seek GSA documents and

cannot be used to compel the production of such irrelevant GSA documents.  The files and

documents responsive to Requests 38 and 39 are held by, and have been produced by, the

agencies that actually purchased products for the transactions at issue in this case.

The only remaining request cited by Accenture -- Request 10 from its second set of requests

– does seek documents from the GSA.  However, it does not seek price lists of hardware and

software vendors.  Instead, it explicitly seeks studies, analyses, memoranda, etc. from the GSA

pertaining to the acquisition of information technology from, by, or through, systems integration

consultants (all of which have already been produced).  None of the documents now sought by

Accenture even remotely respond to this request and do not even reference systems integration

consultants.  Thus, the Accenture Motion does not set forth a document request that can fairly be

read to request the documents it now seeks to compel.  For this reason alone, the Accenture

Motion should be denied.  As explained below, the reason Accenture cannot point to a document

request that calls for the production of Vendor GSA Pricelists is because these documents are

irrelevant to any issue on which the parties have fairly sought discovery in this matter.

**II.     The Documents Sought by Accenture are Not Relevant to the Transactions at Issue in this Case.**

A.     *The Purchasing Agency – not the GSA – negotiated the pricing on the transactions at issue in this case.*

As set forth above, the GSA negotiates schedule contracts with contractors that wish to sell commercial items to the agencies of the United States.  However, the GSA and thus any GSA files are not involved in the actual transactions and contracts that lead to actual sales of products to the agencies.  That activity is carried out exclusively at the purchasing agency level.  It is these actual transactions for specific items, at specific prices and on specific dates that are relevant to this lawsuit.  Agency contracting officers separately request, consider and negotiate each and every purchase of hardware and software that utilize GSA Schedules.  The prices for these transactions are negotiated by those contracting officers and the contractors on the particular transactions.  These negotiations do not involve the GSA personnel or its files.  The Task Orders that result from these negotiations are executed by the agencies and do not involve the GSA.  To the extent an analysis of price reasonableness for hardware and software is made on the transactions at issue in this case, it is made by the contracting officers at these agencies.  All of the documents relating to these transactions:  the requests, the pricing proposals, the analysis of pricing proposals, the negotiation of pricing and the award of actual contracts and task orders;  have all been produced by the United States from the relevant agencies. Thus, even if on some of the transactions the GSA schedules are used as a source of price reasonableness, the relevant analysis of pricing, conclusions on value, and the actual pricing negotiated is made by the agency contracting officer and is set forth in the documents already produced in this case on each of the transactions at issue.

8

B.      *Only Three Contracts At Issue Had GSA Purchases.*

Accenture also fails to mention in its Motion that only three agencies involved in this case, the Defense Logistics Agency, the Department of Interior, and the Department of Education, involve any issue whatsoever connected to resale revenue generated through the use of vendor GSA Schedules.[5]  On each of those contracts, hardware and software products were purchased by Purchasing Agencies utilizing GSA Schedules of vendors. In each of those instances, the United States has already produced the documents pertaining to those purchases. Nevertheless, Accenture seeks irrelevant GSA Schedule documents for the product purchases that took place at the Department of State-ILMS, IRS, US Transcom GTN-21, DeCA, AAFES, Army ITEC-4, and TSA.  For example, the purchases of products from Sun and EMC that are at issue on the IRS transaction *did not involve* a GSA Schedule.  Similarly, the purchases of hardware products on AAFES contracts *did not involve* the GSA Schedules of the vendors.  In other words, for many of the transactions for which Accenture now seeks the GSA Schedules of vendors, the GSA Schedules were in no way connected to the transactions.   Accenture has not endeavored in any way to reveal this fact to the Court or to suggest how a GSA Schedule Price List could possibly be relevant to a transaction that did not involve GSA Schedules.  The reason for that is simple:  there is no possible claim of relevance.  48 CFR §8.404 explicitly limits the applicability to orders placed by agencies against GSA Federal Supply Schedules.

---

[5]  Somewhat oddly, Accenture fails entirely to notify the Court anywhere in its Motion that it is taking the position in its own discovery responses and expert reports that **none of the transactions in this case involved the purchase of hardware or software under a GSA Schedule.**  Thus, incredibly, Accenture is seeking to compel the production of 55 large government contracts in this case despite the fact that it has maintained in sworn discovery responses that these same contracts were not used in the transactions in this case.

9

C.      *In the Very Limited Circumstances Where the GSA Schedule Pricing Has Relevance to the Claims in this Case, the United States has produced the GSA Documents.*

As for the three agencies where GSA pricing is at issue, as noted above, the United States has produced all of the existing documentation underlying the actual purchases made by the agencies at issue in this case.  For example, the United States has produced all documents existing from DLA, DOI, and DOE that relate to the analysis of, and determination by, those agencies of price reasonableness on the transactions at issue in the case.  This includes the *actual* price determined to be fair and reasonable by the agency contracting personnel, the resulting contracts and proposals that contain the price *actually agreed* to, and any analysis by the purchasing agency contracting officials of the *actual transaction*.  The GSA was not involved in those activities in any way and, hence, no GSA files are implicated in that analysis.

There are, however, several limited transactions on the DLA contract where the underlying GSA Schedules are made relevant and discoverable to the transactions at issue.  The reasons for this are specific and tied to the facts of those particular transactions.  This transaction based consideration of relevance is in stark contrast to the overly broad and unwieldy call for all GSA Schedules made by the Accenture Motion.  Where the underlying facts alleged by the United States and/or the defenses asserted by Accenture create potential relevance to the GSA Schedule documents themselves, the United States has produced those files.  For example, the United States has developed evidence that Accenture lied to the DLA about the existence of a GSA Schedule in relation to a certain SeeBeyond software transaction in 2000 and 2001.  As a result, the SeeBeyond Schedule (and the date of its issuance) is both relevant and discoverable and was produced to Accenture.  Similarly, Accenture lied to the DLA about the calculation of

lease stream pricing for the DLA under the e-Plus GSA Schedule.    As a result, the e-Plus

Schedule setting forth the GSA approved lease stream calculation in effect at the time is

potentially relevant and was produced.  Accenture also lied to the DLA about the pricing terms

and conditions that existed under the SAP, BMC, Manugistics and Oracle Schedules.  The

pricing under those schedules thus becomes relevant.  Each of these schedules was therefore

produced by the United States.  Accordingly, to the extent the specific facts and discovery create

an issue that makes the underlying GSA Schedule relevant to the case; the United States has

produced the Schedule.[6]

    D.    *The GSA Schedule Price Lists Are Not Probative of The Government's*
        *Assessment of "Value" on the Particular Transactions at Issue.*

    The only reason offered by Accenture as to the relevance of the GSA Price Lists is that they

are "highly probative of the Government's assessment of the value of the goods and services" it

received.  Accenture misstates the meaning of the price reasonableness determination made by

the GSA.  As Accenture notes in its Motion, the GSA determines a reasonable price for all

products on a GSA Schedule.  The applicable regulations state that this determination may be

relied upon by purchasing agencies.  As noted above, however, this one sentence of the FAR

cannot simply be taken out of context so as to exclude the fact that it is the purchasing agencies

that effect the *actual transactions* under GSA Schedules.  Accenture ignores the fact these very

same regulations explicitly state in the very next sentence that the contracting officer at the

Purchasing Agency makes conclusions about value for the particular transaction.  Moreover,

---

[6] Pertinent to both the issue of burden and the issue of Accenture glossing over the important details of its Motion, Accenture claims that the United States has "produced only a tiny handful of documents associated with the GSA Schedules of vendors." This is patently not true. In fact, in addition to the thousands of documents produced from the GSA files relating to the Accenture contract, the United States has produced more than 2000 documents and tens of thousands of pages from the GSA Schedules identified above.  These are not small contracts containing merely a "handful" of documents, as Accenture suggests.

even the GSA determination on price is not transaction specific, not final, and valid only up to a

certain threshold.  Contracting Officers are instructed to negotiate better prices if the particular

transaction at issue warrants it.  48 CFR §8.404.  Contracting Officers take into account the

particular considerations of a specific transaction – timing, volume, source of supply – to

negotiate the actual price for the actual transactions.  It is these specific analyses that address the

government's assessment of value.  Once again, GSA and its files are not in any way involved in

this process.   It is the agency contracting personnel involved on the particular contracts at issue

that actually assessed and determined the prices that were paid on these transactions. Thus, the

actual determination of the price and value is performed at the agency level and not by the GSA.

The files for this activity have all been produced.  Thus, quite simply, the GSA files do not

reflect and do not contain the determination of the reasonable prices or value of products for the

actual transactions at issue in this case and are again not discoverable for this reason as well.

II.     **The Overwhelming Burden of Responding to these Irrelevant Requests is Not
        Justified and would force the United States to seek an extension of the Discovery
        Schedule in this Case.**

As set forth above, Accenture has not identified any relevance that the sought after GSA

documents have to the case at hand.  Even if there were some small shred of relevance that could

be obtained from these documents, it would be far outweighed by the burden of production,

especially at this stage of discovery.

It has taken the parties almost 30 months of document production to produce the massive

amount of documentation relevant to the eleven contracts that are at issue in this case.  In that

time, Accenture has steadfastly refused to produce documents from its files for any contract that

is not directly at issue -- even if it has documents that may "relate" to issues in this case.  For

example, Accenture has refused to produce the files of other contracts where it priced and sold the same products at issue in this case. Against this back drop, with less than a month remaining in discovery, Accenture seeks to compel the documents from 55 additional government contracts. Even if these documents were relevant to this case, which they are not, the burden of doing so would be overwhelming. Accenture has made no effort to meaningfully limit its requests to anything approaching reasonable. Many of these contracts are gigantic in scope, with hundreds or thousands of modifications of pricelists and terms over the time period that Accenture identifies. Many of the contracts have been archived, given the passage of time since they were utilized. The United States estimates that it would take several months just to locate and make available for review even half of the contracts requested by Accenture. The resources required of the United States to perform such activity would be significant. This would also require a request of the Court for an extension of the discovery schedule by several months. The Court has already denied a joint request to delay the entire pre-trial schedule and trial date. The burden and forced extension that would be necessitated by the compelled production of these documents is not justified by the absence of relevance these documents have to the issues that will be discovered and tried in this case.

   Moreover, a party has a duty to obtain documents and information in a manner that is most appropriate and least burdensome. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C), which provides in relevant part:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>      (i) The discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

      (ii) The party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

      (iii) The  burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C).

As explained above, the actual sales and pricing information for the specific transactions at issue in this case are contained in the files of the agencies that made those purchases whether under GSA Schedules or otherwise.  These documents have all been produced. The other source for this information is the vendors themselves.  Accenture has had an opportunity to subpoena the actual sales data of particular products from these vendors.  For example, Accenture has issued subpoenas to HP, SAP, EMC, and many others.  If Accenture truly believed the information on GSA pricing was relevant to this litigation, it can and should obtain that information from the vendors -- the only entities that maintain data on all of the GSA transactions carried out under their schedules.

## CONCLUSION

For the reasons set forth above, Accenture's Motion should be denied.  The United States has already produced the relevant and discoverable documents concerning pricing in this matter. The additional material sought by Accenture from the GSA is not relevant to any claim or defense being litigated in this case, nor is it likely to lead to the discovery of admissible evidence, and is thus not discoverable.

|                          | For the United States of America,              |
|--------------------------|------------------------------------------------|
|                          | TONY WEST                                      |
|                          | ASSISTANT ATTORNEY GENERAL                     |
| Dated: April 11, 2011    |  /s/ Donald J. Williamson                      |
|                          | Joyce R. Branda                                |
|                          | Pat Davis                                      |
|                          | Donald J. Williamson                           |
|                          | Don.williamson@usdoj.gov                       |
|                          | Linda M. McMahon                               |
|                          | J. Jennifer Koh                                |
|                          | Jenelle M. Beavers                             |
|                          | Greg Pearson                                   |
|                          | Civil Division                                 |
|                          | Commercial Litigation Branch                   |
|                          | P. O. Box 261                                  |
|                          | Ben Franklin Station                           |
|                          | Washington, DC  20044                          |
|                          | Phone:  (202) 514-1511                         |
|                          | Fax:  (202) 305-7797                           |
|                          | CHRISTOPHER R. THYER                           |
|                          | UNITED STATES ATTORNEY                         |
|                          | Shannon Smith (Bar No. 94172)                  |
|                          | Assistant U.S. Attorney                        |
|                          | Metropolitan Tower                             |
|                          | Building, Ste. 500                             |
|                          | Little Rock, AR 72201                          |
|                          | Phone:  (501) 340-2628                         |
|                          | Fax: (501) 340-2730                            |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document will be served via electronic notification to the following counsel of record on this 11th day of April, 2011:

**Lyn Peeples Pruitt** lpruitt@mwlaw.com, bhopper@mwlaw.com

**Anton Leo Janik**, Jr ajanik@mwlaw.com, lbrecht@mwlaw.com

**J. Andrew Jackson** Jacksona@dicksteinshapiro.com

**Jason D. Wallach** wallachJ@dicksteinshapiro.com

**Justin A. Chiarodo** Chiarodoj@dicksteinshapiro.com

**David M. Nadler** nadlerd@dicksteinshapiro.com

**Jacquetta F. Bardacos** jbardacos@packard.com

**Stephen C. Engstrom** stephen@wecc-law.com,marilyn@wecc-law.com

**Shirley Guntharp Jones** shirley@wecc-law.com,amber@wecc-law.com

**Daniel W Packard** dpackard@packard.com


/s/ *Donald J. Williamson*
Donald J. Williamson