**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* NORMAN RILLE and NEAL ROBERTS, | ) ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| vs. | ) ) ) | Case No. 4-04 CV0000985BRW |
| ACCENTURE LLP, ACCENTURE LTD, and PROQUIRE LLC, | ) ) ) | |
| *Defendants*. | ) ) ) | |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER
SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF DOCUMENTS
RESPONSIVE TO ACCENTURE DOCUMENT REQUESTS**

I.      Introduction

The Government's Opposition does not dispute that relevance for discovery purposes should be construed broadly to encompass *any* matter that could bear on an issue that is or may be in the case. It also does not dispute that the proper measure of False Claims Act damages is the difference between the value of what the Government actually received and what it should have received under its contracts with defendant. It concedes that GSA Schedule Pricelists reflect the Government's determination of price reasonableness. And it acknowledges that *at least some* GSA Schedule Pricelists are relevant and discoverable, that it produced those pricelists, and the total volume of those pricelists it has produced is a mere 2,000 pages. Based on these concessions alone, the Court should grant Accenture's motion to compel production of the GSA Schedule Pricelists.

Accenture's discovery requests seek historical GSA Schedule Pricelists ("Pricelists"). Accenture focused its requests during months of correspondence with the Government. The Pricelists are relevant because they demonstrate the Government's assessment of value, and Accenture needs them to rebut the Government's damages claims. The Government understood that Accenture both requested and was entitled to Pricelists before Accenture's motion because it produced several such pricelists. These past productions show the volume of these documents and the burden to produce them is quite small. The Government indisputably possesses additional Pricelists it has not produced. They are relevant and discoverable and the Accenture Motion should be granted.

II.    Accenture Requested Pricelists and the Government Acknowledged That Accenture Was Entitled to Them

Accenture's discovery requests seek Pricelists. The Pricelists are responsive to Accenture Request No. 38 of its First Set of Document Requests because they demonstrate the Government's price reasonableness and value determinations. The Government does not, and can not, dispute that Pricelists reflect a Government determination that offered prices are fair and reasonable, and are a measure of value received. The Government's Opposition merely disputes how persuasive those value determinations are in certain contexts. While the Government's arguments, assuming *arguendo* that any of them are valid, might affect the weight that a finder of fact would give to this evidence as trial, such arguments do not affect whether the Pricelists are discoverable.

The Pricelists are responsive to Accenture Request No. 39 of its First Set of Document Requests because they are related to the Government's decision to purchase third-party products through Accenture. The Government concedes this point on pp. 10-11 of its Opposition (in connection with the DLA, Department of Interior, and Department of Education contracts). The

DSMDB-2919904v1

Pricelists are also responsive to Accenture Request No. 10 of its Second Set of Document Requests, which broadly and expressly seeks "any and all" documents in GSA's possession concerning, among other things:  Accenture, resale revenues earned by technology vendors, and the acquisition of IT products through Systems Integrations Consultants.  The Pricelists independently fall within each of these subcategories of Request No. 10.

Accenture sought the Pricelists in three separate discovery requests, three letters, and many more conference calls and e-mails over the course of many months.  Accenture described in painstaking detail what it wanted and why.  Not once since Accenture first wrote to the Government in September 2010 regarding its failure to produce Pricelists has the Government asserted that Accenture's document requests did not cover Pricelists.  In fact, the Government purports to have produced Pricelists for at least six vendors (which it acknowledges are relevant and responsive), belying any argument that are beyond the scope of Accenture's discovery requests.  The Court should reject the Government's 11th hour argument to the contrary.

III.   The Pricelists Fall Within the Broad Scope of Discovery and Accenture Needs Them to Defend Against the Government's Damages Claims

Controlling authority holds that relevance determinations for discovery purposes should be "construed broadly" to "encompass on any matter that could bear on an issue that is or may be in the case."  *Keaton v. Prop. & Cas. Ins. Co. of Hartford*, No. 4:07-CV-634-BSM, 2008 WL 2519790, at *1 (E.D. Ark. June 20, 2008) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).  The Government does not dispute this statement of the law (the Government does not cite a single case in its Opposition).

Accenture is entitled to the Pricelists it seeks under this broad standard of discovery.  The Government put the Pricelists at issue when it sought False Claims Act damages from Accenture

DSMDB-2919904v1

for invoices submitted by Accenture that included those vendors' products.[1]  If a violation of the

False Claims Act is proven, damages are the difference between the value of what the

Government actually received and what it should have received under its contracts with

defendant.  *See United States v. Bornstein*, 423 U.S. 303, 316 n.13 (1976); *United States v.*

*Cooperative Grain & Supply Co.*, 476 F.2d 47, 63 (8th Cir. 1973); *United States v. Advance Tool*

*Co.*, 902 F. Supp. 1011, 1017 (W.D. Mo. 1995), *aff'd*, 86 F.3d 1159 (8th Cir. 1996).  The

Government does not dispute, and therefore implicitly concedes, the accuracy of this statement

of the law.

Because GSA Pricelists reflect, by law, a determination that offered prices are fair and

reasonable, they are highly probative of the Government's assessment of the value of the product

and services it received and retained under the Contracts at issue.  *See* 48 CFR § 8.404(d),

Transcript of Jeff Koses at p. 50, 11-21.  The Government spends most of its brief disagreeing

with Accenture about how probative GSA pricelists are in some cases, but does not dispute that

Pricelists are an assessment of value and price reasonableness.  The Government cannot dispute

that this assessment of value remains valid whether or not the Government is able to negotiate

lower pricing on any particular contract.  They thus fall within the broad scope of discovery.

Indeed, the Government concedes that Pricelists are discoverable in connection with the DLA

contract.  Gov't Br. at 10-11.  Accenture needs the remaining Pricelists to defend against the

Government's damages claims and is entitled to them.

IV.     The Government Will Not Be Unduly Burdened to Produce the Pricelists and It Would
        Prejudice Accenture if They Were Not Produced

---

[1] Exhibit 4 to Accenture's motion identifies all Pricelists the Government put at issue by seeking
damages for invoices containing those vendors' products.  Exhibit 4 identifies the relevant
entities by vendor, Schedule number, and relevant time period.

DSMDB-2919904v1

Accenture's requests are not burdensome.  The Government's argument to the contrary is a red herring.  Footnote 6 on page 11 of the Government's brief states the volume of GSA Schedule pricelists it has produced (for at least a half-dozen vendors) is 2,000 pages.  This is far from an "overwhelming" burden in a case with millions of pages of documents produced.

Exhibit 4 to Accenture's Motion identified all Pricelists the Government put at issue by seeking damages for invoices containing those vendors' products.  Exhibit 4 identifies the relevant entities by vendor, Schedule number, and relevant time period.  Accenture has worked diligently to focus its requests.  The Government concedes that GSA maintains the files and its past production of GSA Pricelists show the documents are close at hand and easy to produce.

It would work a substantial injustice for Accenture to be forced to seek pricelists from dozens of third parties at this late stage of the case when they are all readily available at GSA, and when Accenture relied on the Government's repeated assertions that they could and would provide the Pricelists.  Moreover, Accenture needs the official Government files because those files most accurately reflect the assessments of value and price reasonableness the Government maintained for those products.  Forcing Accenture to seek to documents from third parties at this stage of the case would prevent Accenture from obtaining documents it needs for its defense.

## III.   <u>CONCLUSION</u>

The Pricelists Accenture seeks are relevant and discoverable.  Producing them would not cause the Government an undue burden and denying Accenture's motion would prejudice Accenture's defense.  For the foregoing reasons, and those set forth in Defendants' original Memorandum, Defendants' Motion to Compel Documents Response to Accenture Document Requests should be granted.

DSMDB-2919904v1

Dated:  April 22, 2011                          Respectfully submitted,


                                                By:   /s/ Lyn P. Pruitt
                                                      Lyn P. Pruitt
                                                      Ark. Bar No. 84121
Of Counsel:
J. Andrew Jackson (admitted *pro hac vice*)
*jacksona@dicksteinshapiro.com*               Mitchell, Williams, Selig, Gates &
                                                Woodyard, P.L.L.C.
                                                425 West Capitol Ave., Suite 1800
Dickstein Shapiro LLP                           Little Rock, Arkansas  72201
1825 Eye St. NW                                 (501) 688-8800
Washington DC, 20006                            *lpruitt@mwsgw.com*
Tel:  (202) 420-2200
Fax:  (202) 420-2201

6

DSMDB-2919904v1

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

**Jacquetta F. Bardacos**
jbardacos@packard.com

**Michael Bierman**
mbierman@luce.com
tdelpomar@luce.com

**Stephen C. Engstrom**
stephen@wecc-law.com
marilyn@wecc-law.com

**Philip J. Favro**
pfavro@packard.com

**Craig H. Johnson**
cjohnson@packard.com

**Brian R. Young**
brian.young4@usdoj.gov

**Linda McMahon**
linda.mcmahon2@usdoj.gov

**Jeehae Jennifer Koh**
jennifer.koh@usdoj.gov

**Lon D. Packard**
lpackard@packard.com

**Von G. Packard**
vpackard@packard.com
jsimmons@packard.com

**Jenelle M. Beavers**
jenelle.beavers@usdoj.gov

**Jordan L. Strauss**
jordan.strauss@usdoj.gov

**Jeffrey Wexler**
jwexler@luce.com
tdelpomar@luce.com

**Donald J. Williamson**
don.williamson@usdoj.gov

**Daniel W Packard**
dpackard@packard.com

**Shannon S. Smith**
Shannon.Smith@usdoj.gov
Paulette.Chappelle@usdoj.gov
Maria.Altadonna@usdoj.gov

**David M. Nadler**
nadlerd@dicksteinshapiro.com

**Shirley Guntharp Jones**
shirley@wecc-law.com
lorraine@wecc-law.com

**Ronald D. Packard**
rdpackard@packard.com

**Stanley Gibson**
sgibson@jmbm.com

     /s/ Lyn P. Pruitt
     Lyn P. Pruitt